HAMMOND ET AL., respondents, *v.* FOSTER ET AL., appellants.

AMENDMENT OF PLEADINGS.— It is in the discretion of the court to refuse to allow amendments to pleadings, if in its judgment they are not needed or warranted by the facts of the case.

STRIKING OUT EVIDENCE.— It is error in the court to strike out or withdraw from the consideration of a jury evidence that is competent under the pleadings.

WITHHOLDING INSTRUCTIONS FROM JURY, THOUGH BY MISTAKE, GROUND FOR NEW TRIAL.— It is cause for granting a new trial if important instructions given by the court were not sent in to the jury, with others, though the omission was unintentional. Either the jury should have had all or none of the instructions given.

*Appeal from Second District, Silver Bow County.*

J. C. ROBINSON, for appellants.

Defendants should have been permitted to amend their answer as asked (see pp. 19 and 20 of transcript), so as to present their defense, and to make their answer conform to the evidence given. *Stringer* v. *Davis*, 30 Cal. 320; *Valencia* v. *Couch*, 32 Cal. 344; *Hirshfield* v. *Aiken*, 3 Mont. 453; *Hartly* v. *Preston*, 2 Mont. 415; *Wormal* v. *Reins*, 1 Mont. 630; secs. 114, 117, Practice Act.

Viewing this as a variance in the evidence from the answer, the amendment should have been allowed while it might properly be regarded. Secs. 110, 111, Practice Act; 3 Wait's N. Y. Pr. 165, 166, 167.

After the evidence of Hughes, as contained in said exception, p. 19, was admitted without objection by plaintiffs, and he had been cross-examined by plaintiffs relative thereto, it was error to strike it out and withdraw it from the jury. *People* v. *Long*, 43 Cal. 445.

The court erred in admitting in evidence the letter of Connell to Bonner, p. 23. It was not competent, being hearsay; was merely the declaration of Connell, the agent of plaintiffs, not under oath, to one of plaintiffs, as to what Foster said, and defendants had no opportunity of cross-examining Connell as to what Foster said. In the first place, the declaration of the agent to the principal, whether oral or written, is not proper evidence, is incompetent; and second, if it was proper to prove the declarations or admissions of Foster, it should have been done by Connell himself. Greenleaf on Evidence, secs. 99, 124; Wharton on Evidence, sec. 172, p. 173; sec. 175, first and last part.

The letter does not fall within any of the exceptions. 1 Greenleaf on Evidence, sec. 123.

Unless it clearly appears by the record to the contrary, injury will be presumed from admitting improper testimony. What influence the letter from Connell to Bonner had on the jury the court cannot say. By insisting on its introduction plaintiffs considered it material, and intended it to have some influence. *Lally* v. *Wise,* 28 Cal. 542; *Grimes* v. *Fall,* 15 Cal. 64; *Roff* v. *Duane,* 27 Cal. 569.

The evidence was offered for a particular purpose, and in so offering it plaintiffs stated that they would follow it up and prove that Foster refused to take any more meat, which plaintiffs failed to do, and said evidence was not withdrawn. See evidence of plaintiffs — Bonner, pp. 39, 46; Connell, 40.

The second instruction of plaintiffs, p. 28, assumes that there was a subsequent contract set out in the answer of defendants, and changed the burden of proof to defendants to establish. Such is not shown by the answer, and the burden of proving the contract was on the plaintiffs, and said instruction is error. See p. 6 of answer.

The same objection exists as to the fourth instruction, p. 29.

The seventh and eighth instructions, given at plaintiffs' request, were erroneous, for the reasons: It was an issue presented by the pleadings (see Answer, p. 6, and Replication, p. 16) whether or not plaintiffs agreed to deliver defendants all their bacon in Missoula county which the plaintiffs should ship to Butte that season. Foster testified (p. 45) that such was the contract; and also, in June, 1880, Bass, one of the plaintiffs, took eleven thousand pounds of bacon to Butte, and sold the same to other parties than to defendants (p. 45); and Bonner testified (p. 47, at bottom) that the bacon which Bass took to Butte and sold to others than defendants in

June, 1880, was bacon which belonged to plaintiffs, but prior thereto the other plaintiffs sold their interest in it to Bass.

Plaintiffs could not escape liability on the contract by selling to Bass, and Bass do with the bacon what all of plaintiffs could not do. It certainly would have been a breach of the contract for all of plaintiffs to have hauled the bacon which they had in Missoula county to Butte and sold the same to other parties than defendants, and, if so, we can see no difference in its aspect in a sale thereof by plaintiffs to plaintiff Bass, and his selling to others than defendants. In such case the act of plaintiff Bass was the act of all of plaintiffs. And if this be correct, those instructions are wrong, and the third instruction asked by defendants should have been given (p. 34).

A new trial should have been granted on account of the failure, by accident, as appears by affidavit (p. 37), to give defendants' fifth instruction asked, and marked "given" by the court (p. 37). Said instruction shot have been given to the jury, for the reason that it was a question for them to consider whether or not the bacon sold by Bass in June, 1880, was not the bacon of all of the plaintiffs.

The verdict was against the law as embodied in defendants' fourth instruction (see p. 34), and against the evidence of the contract. There was a material variance between the complaint and proofs, in that the complaint set out a cause of action in *assumpsit*, using a common count, and the proof showed a special contract.

HIRAM KNOWLES, for respondents.

The amendment to the answer did not correspond to the evidence introduced. See pp. 19 and 20 of transcript.

The evidence was as follows: "And among other things it was agreed on part of plaintiffs that they would protect defendants against the shipment of bacon to the Butte market by any one else, from Missoula county,

and as to any bacon, etc., of plaintiffs, in said county."
See p. 19 of transcript.

The amendment offered is as follows: That by the terms of said contract said plaintiffs guarantied and promised defendants that no other parties should take any bacon, hams or shoulders to said Butte market from said Missoula county, of the bacon, hams and shoulders of, and then ordered or put up and cured by, said plaintiffs or said plaintiff Bass, except to defendants.

There is a great difference between a contract to protect a party against shipments, and a contract that guaranties that no other parties shall ship or take any hams from Missoula county of the bacon, hams and shoulders of, and then ordered or put up and cured by, said plaintiffs or said plaintiff Bass. The amendment and the evidence did not cover the same ground. There was no evidence that any amount of meat had been ordered by any one.

Again, the contract as testified to was indefinite. How long were plaintiffs to protect defendants? Forever? Was it a covenant running with the existence of Missoula county? The proposed amendment was indefinite. It does not appear in this, or anywhere in the original answer, that defendants had ordered any bacon, hams and shoulders from Missoula county. It does not specify where these hams, shoulders and bacon were put up and cured. If it means then put up and cured, it does not show that any of the hams, bacon and shoulders then put up and cured were ever sold in the said Butte market to others than defendants. It does not show whether the said Bass took and sold said meat on his own account or in partnership or joint account. The time this guaranty and promise was to continue is nowhere specified in the answer. Bonner was not required to deliver any meat after the states bacon arrived, according to the evidence of Hughes, a witness for defendants. See p. 43 of transcript. There are no allegations in this amendment that

defendants relied upon these promises and guaranty, and there are none in the amended answer which by any fair intendment can be made to apply to the same.

Again. It is difficult to see where said amendment comes into the answer in this transcript. There seems to be no place where the same can be placed that it will not confuse and render unintelligible the rest of the answer. An immaterial amendment should not be allowed. *Levenson* v. *Schwartz*, 22 Cal. 230. There is no affidavit of merits, as required by sec. 114, p. 60, of the laws of Montana of 1879, and no record of any waiver of such affidavit. The refusal presumed to be right.

Lastly. The filing of a pleading in this manner rests in the discretion of the court. Moak's Van Santvoord's Pl. pp. 827–29; *Cook* v. *Spears*, 2 Cal. 409; *Stearns* v. *Montgomery*, 4 Cal. 227; *McMinn* v. *O'Conner*, 27 Cal. 247–48; *Felch* v. *Beaudry*, 40 Cal. 439.

The court committed no error in admitting the letter of Connell to Bonner.

First. It is not true that defendants had no opportunity to cross-examine Connell as to what Foster said. See transcript, p. 41, Connell's evidence.

Second. The rule of law is that when a fact, such as was communicated in that letter, comes to the knowledge of an agent, it is his duty to communicate the same to his principal; and the law presumes he will do his duty, and hence the principal is warned by such notice, and can act on the same. Wade on Notice, secs. 33, 688, 690; *The Distilled Spirits*, 11 Wall. 356. The only object in introducing this letter as specified, at the time, was to show actual notice to plaintiffs of this determination of Foster & Co. See p. 23 of transcript. How could the defendants be prejudiced by the plaintiffs proving a fact which it was presumed in law was the case? The plaintiffs should not have been forced to rely on the legal presumption of a fact when they could prove it. But even if this was wrong, no new fact was

introduced into the case when the legal presumption was that the fact existed. There could have been no injury, then, to defendants by the introduction of this letter.

Now, it is claimed that plaintiffs offered to follow this up, and did not. · This is not true. They proved the notice of Foster & Co. by Connell. See p. 41 of transcript. It never was proposed to show that Foster & Co., as a matter of fact, had not taken more meat, but that they had notified Connell, agent of plaintiffs, that they would take no more.

Again. In the evidence of both Connell and Bonner, it is testified to without objection, that Connell notified Bonner by letter that Foster & Co. would take no more meat. See Bonner's evidence, p. 47 of transcript; also Connell's evidence, p. 41 of transcript. This evidence contains as much as the letter. The defendants could not have been prejudiced by striking out evidence not material to any issue.

As to the second instruction, there was certainly some evidence that Foster & Co. claimed a subsequent contract as to the price of lard. See Connell's evidence, p. 40 of transcript; also Bonner's evidence, p. 47 of transcript.

Now, by referring to the judgment, p. 2 of transcript, it will be seen that the jury found for plaintiffs only $300, when the claim was for $356. So the jury, it is evident, found against plaintiffs as to the price of this lard, specified in said instruction, and no damage was done. When the court examines even the evidence in this record, it will see that the defendants nowhere stuck to their answer. That the contract testified to, and that set up in defendants' answer, was much different. And the instructions were confined much to the issues presented by the evidence, and not to the issues presented in the pleading.

All there was in the fourth instruction is, that defendants had set up a contract with plaintiffs affirmatively,

and had claimed damages for a breach of the same as an offset against plaintiffs' demand. And the court instructed the jury that they must come to a definite and certain conclusion as to this contract.

If there was no contract proven, then they must find for plaintiffs, because the complaint in fact was not denied. The burden was nowhere put upon the plaintiffs to disprove the contract defendants had alleged in their answer.

As to the seventh and eighth instructions there certainly was no error. Under the issues, here was a contract set forth in which it was claimed that all of the plaintiffs promised to do a certain thing, namely, deliver to defendants all the meat they shipped to Butte. Now, if one of the plaintiffs, on his own account, and for his own use and benefit, shipped meat there which he did not deliver to defendants, certainly this was no violation of defendants' contract. When several parties associated together, in their associate capacity agree to do a thing, can it be possible that all will be liable because one in his individual capacity does not do it? The appellants have found no authority to sustain this view. I cannot think there is any. Parties are bound only by the contract they make. If this was a several contract, and bound each in his separate capacity, then Bass alone would be the one liable for the breach of the contract. Plaintiffs did not undertake that Bass should not do the thing, but that they would not do it.

As to the fifth instruction, which by accident was not taken out by the jury, there is this to be said: Undoubtedly the instruction was read to the jury. Then the instruction is not true as a matter of fact. The answer of defendants bears certainly a different construction from that recited in the instruction. When a court undertakes to state the issues in the pleadings, he should state them correctly.

Pleadings are certainly, if not construed most strongly

against the pleader, to be construed according to the natural import of the language used.

Again. There was not, and is not, in the record one particle of evidence that would go to show that this was the meat of plaintiffs and not the meat of Bass. If the jury had so found, the finding would have been in the face of all of the evidence. A court should not give an instruction not founded upon the evidence. *Trustees of Iowa College* v. *Hill*, 12 Iowa, 508; *United States* v. *Gotlieb Britting*, 20 How. (U. S.) 252; *Michigan Bank* v. *Eldred*, 9 Wall. 553–4.

Taking all the facts about this instruction, and the defendants could not have been prejudiced by the jury not taking it to their room. The verdict was not against the law of the fourth instruction of defendants. There was evidence by Bonner going to show that he did not consider he had made a special contract except as to the meat first sold; as to the balance, defendants could take it or not; they could deliver it to defendants or not.

But if the evidence was of a special contract, that was not such a variance as would justify the jury in finding for the defendants.

Again. The facts set forth in the complaint were admitted as true. The first denial is of indebtedness, which is not good. 35 Cal. 459, 460; *Wells* v. *McPike*, 21 Cal. 218. Denials, except as hereinafter set forth, not good. *Levensen* v. *Schwartz*, 22 Cal. 230; *Richardson* v. *Smith*, 29 Cal. 530; Pomeroy's Remedial Rights, 633.

The whole issue was tried as to whether the contract as set forth in the answer was true. If there was a special contract, plaintiffs had a right to disregard it, as defendants had not complied with it; and suit on an implied contract was proper, and it was proper to introduce evidence of original contract. *Reynolds* v. *Walker*, 6 Cal. 108; *Hosley* v. *Black*, 28 N. Y. 443; Moak's Van Santvoord's Pl. 171.

Again. This could have been nothing more than a

variance; no injustice was done, and it should have been disregarded. Statutes of Montana of 1879, secs. 110, 111 (1st division).

The court, I think, will fail to find any verdict in this transcript.

Motion for a new trial is generally made with the view of setting aside a verdict.

CONGER, J.   This action is brought to recover a claim of $356.36, being the balance of an account for goods, wares and merchandise, to wit, bacon, hams, shoulders and lard, sold and delivered by plaintiff to defendants, at their special instance and request, between the 1st day of December, 1879, and the 1st day of June, 1880; that said amount is now due and unpaid, etc.

Defendants, answering, deny all the allegations of the complaint and set up a counterclaim, to which plaintiff replies.

In the course of the trial, Sylvan Hughes, witness for defendants, testified as follows:

"I was present when Bonner and Foster made the contract as to the bacon for which this suit was brought. Bonner said they had a large lot of bacon, hams, lard, etc., in Missoula county for the Butte market, and wanted to put it all in our house so as not to come in competition. We proposed to sell meat all around for fifteen cents per pound, and to continue to deliver as long as he delivered at the Butte market.   Foster said, when the states bacon arrived he might have a lot on hand and could not compete with bacon from the states.   Bonner said as soon as states meat arrived, whatever defendants had on hand was to be weighed up and settled for at price of states bacon, and thereafter all delivered should be at prices which it cost to lay states bacon down.   The lard was to be at sixteen cents per pound.

"Bonner said that no meat should come from Missoula but his.   They had control of all of it.   They were not

bound to deliver bacon after states bacon came in, but if they did, Foster & Co. were to have it. The greater portion of the lard came in forty-pound cans. There was a difference in the market of four cents per pound between forty-pound cans and cans from three to twenty pounds. There were fully two thousand pounds of lard in cans over twenty pounds. About the 13th of June, Mr. Bass, one of the plaintiffs, came to Butte with what he said was eleven thousand to fourteen thousand five hundred pounds of bacon, which he sold to others than Foster & Co. He said he had bought out the others and was on his own hook and would not deliver to defendants at price of states bacon. The market price was about seventeen cents.

"Bonner guarantied that no other Bitter Root bacon should come in. This contract covered the entire season of 1880 up to July. Bass said he had bought Bonner & Co. out, and could not stand states prices. It cost eleven cents per pound to lay states bacon down in Butte. Bonner guarantied for season of 1880. Foster was to take all they delivered. What came to Butte market was to go to Foster & Co. Bonner said they had all the meat from Missoula county for sale. What induced Foster to pay such a high price for it was that no one else should sell Bitter Root bacon in Butte. Foster had states bacon when Bass brought that bacon on the 14th of June."

After the introduction of this evidence, plaintiff moved to strike out a portion thereof as not warranted by the pleadings. Defendants then offered to amend their answer to make it conform with said evidence, and offered the following amendment, to wit, to be inserted after the word "lard" in line 4, page 4, in amended answer: "That by the terms of said contract, said plaintiffs guarantied and promised defendants that no other parties should take any bacon, hams or shoulders to said Butte market from said Missoula county, of the

hams, bacon and shoulders of, and then ordered or put up and cured by, said plaintiffs, or said plaintiff Bass, except to defendants; but in violation of said agreement, one of said plaintiffs, said W. E. Bass, took of bacon, hams and shoulders so put up and cured by said plaintiffs, about eleven thousand pounds thereof, and sold the same to other parties in said market than defendants, to the defendants' damage in the sum of $400. Wherefore defendants pray judgment as prayed in their answer."

In defendants' answer there is this allegation: "Plaintiffs agreed with defendants to sell and deliver all bacon, hams, shoulders and lard, put up at their said packing house, which was intended by them for the said Butte city market, or that they should thereafter deliver in the said town of Butte to defendants, at their, defendants', store in said Butte City, upon the terms and conditions hereafter set out. That said plaintiffs, as an inducement to make and enter into said contract, represented that they had a large amount of such bacon, etc., to sell in Butte City, and, if defendants would agree to purchase all of it that plaintiffs might deliver in said Butte, upon the prices and terms stated, the defendants should have the entire lot. The defendants, relying upon these representations, were induced to and did buy all of said bacon, etc., and plaintiffs agreed to deliver the same to defendants at the following prices."

The answer further states "that plaintiffs, disregarding their said agreement, did deliver and sell to others than defendants a large amount of bacon, etc., thirteen thousand pounds, to defendants' damage," etc.

These are, in substance, the same as the amendment offered by defendants to their answer. In the amendment it is said plaintiffs "guarantied and promised."

There is not such a material difference between the answer and the amendment as to make it error for the court, in its discretion, to refuse the motion.

The testimony could as well have been introduced,

and was introduced, under the answer without amendment.

Under the pleadings the evidence was competent and material to the issues, and it was error to withdraw it from the jury.

It appears that by a mistake one of the instructions which the court had given to the jury was not by them received. This instruction was material to the law of the case, and, as it was intended by the court, should have gone to the jury.

The court may, in its discretion, withhold all of the instructions from the jury, or may allow them all to be taken by the jury; but it will not do to say that it can separate them, and give part and retain part.

It is true this happened by accident, but the law is the same.

Judgment is reversed, and the cause remanded for a new trial.                    *Judgment reversed.*