MERRILL *v.* MARKER.

(*Circuit Court, N. D. California.* July 27, 1891.)

ACCOUNT STATED—REOPENING—LAPSE OF TIME.

Plaintiff and defendant entered into an agreement by which plaintiff conveyed to defendant an undivided half interest in certain lands, water-rights, and ditches in consideration of defendant's advancing a certain sum to be expended in improving the property under the mutual direction and consent of both parties, which was to be repaid defendant out of the first money realized from sales or loans upon the property. After some progress had been made in the work of improvement, the parties disagreed as to the proper method of conducting it, and another agreement was made, by which defendant was to reconvey his half interest to plaintiff on payment at a certain time of the sum agreed to be advanced, and one-half of the amount expended in excess of that sum. The contract recited that the total of these two amounts was a stated balance of the moneys advanced and expended by defendant, and at the same time plaintiff executed a mortgage on his undivided half interest for one-half of the amount advanced by defendant in excess of the sum originally agreed on. Plaintiff never tendered the amount stipulated in the second agreement, and there was no evidence of any fraud, imposition, or undue advantage in procuring it. *Held*, that a court of equity would not, after the lapse of eight or ten years, readjust the accounts which the parties had agreed to show a stated balance between them.

In Equity.   Bill by Charles A. Merrill against **Peter N. Marker for accounting** and reconveyance of certain real estate.

*E. V. Spencer* and *J. A. Watt*, for complainant.

*J. F. Alexander* and *W. M. Boardman*, for respondent.

HAWLEY, J.   This suit was brought (1) to compel an accounting; (2) for a decree ordering respondent to convey to complainant the real property mentioned in the complaint, upon such terms as may be decreed just and equitable; (3) for a decree ordering respondent to cancel and surrender to complainant a certain note and mortgage; and (4) for such other and further relief as may be deemed just and equitable.

The taking of testimony before a commissioner duly appointed for that purpose covered a period of about six months.   The record is very voluminous, embracing over 2,000 pages of type-written testimony, and embodying the business transactions between the parties for a period of nine years.   From the record it appears that in April, 1881, complainant was the owner of certain real estate in Lassen county, considered by him to be of great value.   He was in limited financial circumstances, without the necessary means to develop the property in order to sell or dispose of it to advantage or profit.   He had high hopes and expectations that, if a suitable amount of money could be procured, the property could be made very valuable, and that large amounts of money could be realized therefrom, either by cultivating and developing the same, or by a sale of all or portions thereof.   The respondent was a man reputed to be of great wealth, ready to embark in any large business undertaking that offered fair opportunities of profit in the investment of his means.   Negotiations were entered into with a view of uniting the property of complainant with the money of respondent.   Various plans were discussed, the property carefully examined, and, as a result of these negotiations, the complainant, on the 8th day of April, 1881, made, executed, and delivered to respondent a deed of an undivided one-half interest in the property.   As a consideration for this conveyance, and as one transaction, the parties then entered into the following agreement:

"This agreement, made and entered into the eighth day of April, A. D. 1881, by and between P. N. Marker, of Washoe county, state of Nevada, party of the first part, and Charles A. Merrill, of the county of Lassen, state of California, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the execution and delivery of a certain deed bearing even date herewith to him, conveying an undivided one-half interest in and to certain real property, water-rights, ditches, flumes, and iron pipes, and situated in Lassen county, state of California, by said second party, and of the covenants and agreements hereinafter contained on the part of said second party to be faithfully observed, kept, and performed, does promise, covenant, and agree with said second party that he will advance and expend the sum of sixteen thousand dollars, or so much thereof as may be necessary, within three years next ensuing, in prosecution of the work of making and constructing a cut or flume or both upon a survey already selected, for the purpose of reaching and conducting the waters of Eagle lake through the same to Willow creek for the irrigation of certain desert lands, and for the pur-

pose of selecting and obtaining title to such lands, and clearing parts thereof of incumbrances now existing thereon, and other purposes incident to the premises in Lassen county aforesaid: provided, nevertheless, said moneys shall be expended only upon the mutual consent and direction of both said parties, and as they mutually may deem best and proper, and also only mutually contract for and conduct the prosecution of said work: and provided, nevertheless, said party of the first part shall not be required to advance and expend said moneys, or any part thereof, if such sum, or any part thereof, can be or is at any time during the period of years aforesaid had and obtained by loan, or by sale of part of said property: and provided, further, nevertheless, that said sum of money, or any part thereof, so advanced and expended by said party of the first part shall be repaid to him out of the first moneys realized out of and upon said property by loan thereon or sales thereof. That the said party of the second part, in consideration of the covenants, agreements, and premises aforesaid, does consent, covenant, and agree, as party of the second part hereto, to the foregoing terms, conditions, covenants, and agreements on his part to be faithfully kept and observed, and does covenant and agree with said party of the first part that he shall expend the moneys advanced under his direction as aforesaid, and contract for and conduct the prosecution of the work aforesaid, and shall not be required to advance said sum, or any portion thereof, if such sum, or any part thereof, can be had and is at any time during the period of years aforesaid had and obtained by loan or by sale of parts of said property; and that said sum of money, or any part thereof, so advanced and expended as aforesaid, shall be repaid to said party of the first part out of the first moneys realized out of and upon said property, by loan thereon or sales thereof; and also said party of the second part covenants and agrees with said party of the first part that he, said second party, will duly sign, make, execute, and deliver with said first party, on demand, any mortgage, deed, or deed of conveyance in due form, or other paper, on or of said property, or parts thereof, to secure and obtain a loan of money or proceeds of sales thereof, to put into and for the prosecution of said work and obtain title to said lands, and to fully carry out the promises aforesaid. In witness whereof said first and second parties have hereunto set their hands and seals the day and year first above written.                                        P. N. MARKER.
                                                                  "C. A. MERRILL.
     "Signed and sealed and delivered in presence of JOHN F. ALEXANDER."

The foundation of complainant's case rests upon the following covenant in said agreement:

"Provided, nevertheless, said moneys shall be expended only upon the mutual consent and direction of both said parties, and as they mutually may deem best and proper, and also only mutually contract for and conduct the prosecution of said work."

It appears that respondent, by the consent of complainant, and in pursuance of the agreement, commenced work in constructing a tunnel to tap the waters of Eagle lake. Some time after this work was commenced differences of opinion arose between the parties as to the expenditure of the money. Complainant thought it best to only make a face on the tunnel, and do sufficient work thereon to make good the title to the waters of Eagle lake, and then to expend the balance of the money in the purchase and improvement of lands by sowing alfalfa, starting a town at Belfast, and thus creating a property from which there would be an income, which could, at the proper time, be applied towards the construc-

tion of the tunnel; and, if such income was not sufficient, then they could borrow sufficient money on the real estate, or sell portions thereof, to enable them to complete the tunnel. The respondent was of opinion that the real value and profit of the enterprise was to be gained by first tapping the waters of the lake; that the principal part of the money he was to advance ought to be expended in that way; that the acquiring of land and improving the same and building a town should be secondary; that, perhaps, more profit could be realized by selling the water to others who might purchase government lands and improve the same than to undertake—with the amount of money agreed upon to be expended—the acquiring of more lands, etc. These differences of opinion led to frequent discussions and more or less suspicion and ill feeling; but the work progressed at the tunnel.

There is a direct conflict in the testimony of the respective parties, especially as to all the minor details of the transactions between them. The complainant testifies that he never agreed to the expenditure of the money on the tunnel, except at the start, to do enough work to hold the water-right. On the other hand, respondent claims that complainant was anxious and willing to have the tunnel run, and produces certain letters written by the complainant during the time that he states in his testimony that he protested against being held responsible for money expended on the tunnel. On the 11th of March, 1882, complainant, in a letter to respondent, states:

"Everything at the lake is progressing finely, and they are making good progress. * * * Yours, in good faith."

On the 14th of March, 1882, he writes:

"Spring is near, and there are some things necessary to be done at once; and I hope you will not delay coming. The work at the tunnel is going on fine, and we are doing the work much cheaper than I expected, and I think we have every reason to feel encouraged. I am, at least."

On the 8th of April, 1882, he wrote another letter, in which he said:

"In case you cannot come at once, do not fail to send me, say $50, or $100, as it is necessary. I hear that several of our men have quit at the lake, which I am sorry to hear. They have been making splendid progress, and I feel more than pleased with the progress made, and the work is costing much less than I expected; and I will say that our affairs here look well. Hoping to see you here soon, I remain, as ever, full of faith and hope."

These letters were written, as complainant contends, for the purpose of enabling Marker to secure men of means to take an interest in the property by purchase or otherwise. As the work progressed, and the expenses increased, it became evident that the carrying out of their plans would involve a much greater outlay of money than the contract called for to be advanced by respondent. In the fall of 1882 respondent claimed that he had already advanced more money than he was required to do, and insisted that, if any further expenses were incurred, they must be paid jointly. He declined to advance any more money unless complainant advanced an equal proportion. Both parties became more and more

dissatisfied, and, as it began to dawn upon them that failure, instead of success, might be the result of their efforts, they became discouraged. Criminations and recriminations often occurred. Then it was that other and further negotiations were discussed between them. Complainant, in the fall of 1883, proposed to deed his remaining one-half interest in the property to secure respondent for any further advances he might make. Respondent declined to accept this, and again refused to advance any more money unless complainant advanced his proportion. In these negotiations respondent expressed the desire to get back the amount of money he had advanced, and complainant was desirous of having the property in such a condition as to enable him to control it, in order that he might be able to make better terms with other parties. Complainant suggested that respondent should sell his interest, and, after several days of earnest efforts to come to some definite conclusion, the negotiations resulted, on the 15th of October, 1883, in the execution of the following agreement:

"This agreement, made and entered into this fifteenth day of October, A. D. 1883, between P. N. Marker, of Washoe, Washoe county, state of Nevada, the party of the first part, and Charles A. Merrill, of Lassen county, state of California, the party of the second part, witnesseth: That said party of the first part, in consideration of the covenants and agreements on the part of the said party of the second part hereinafter contained, agrees to sell unto the said party of the second part all the right, title, and interest, estate, claim, and demand, both in law and in equity, as well in possession as in expectancy, of the said party of the first part of, in, and to the undivided one-half (1-2) of those certain tracts, pieces, or parcels of land situate and being in the county of Lassen, state of California, and more particularly described as follows, to-wit: [Here follows a full description of the property.] And the said sale as above written, and of the property above described, and with the reservation above written, is hereby agreed to be made as aforesaid by said first party to said second party for the full sum of twenty-two thousand seven hundred and fifty dollars in United States gold coin, to be paid to said party of the first part by said party of the second part on or before the fifteenth day of May, A. D. 1884; the said sum of $22,750.00 dollars above written being hereby agreed to be a stated balance of moneys heretofore advanced and expended by said party of the first part, upon the whole of said property of which an undivided one-half is herein described, and under an agreement heretofore made between the parties hereto, and bearing date the ———— day of April, A. D. 1881. And the said party of the second part, in consideration of the premises, agrees to pay in U. S. gold coin to the said party of the first part the said balance and sum of twenty-two thousand seven hundred and fifty dollars on or before the fifteenth day of May, A. D. 1884. And in case of a failure to comply with the terms hereof in the manner and at the time as herein provided, by the said party of the second part, the said party of the first part shall be released from all obligations in law or equity to convey said property, or any part thereof, and said party of the second part shall forfeit all right thereto. And the said party of the first part, on receiving such payment at the time and in the manner above mentioned, agrees to execute and deliver to the said party of the second part, or to his assigns, a good and sufficient deed for the conveyance to said second party of all the right, title, and interest, estate, claim, and demand of him, the said first party, of, in, and to the said property above described, except the water, water-right, and easement hereinabove reserved, free from all incumbrance, not outstanding, that is

legally chargeable against said property, or incurred or suffered by or through said party of the first part. And it is hereby fully agreed and understood that the stipulations aforesaid are each and all to apply to and bind the heirs, administrators, executors, and assigns of the respective parties hereto. In witness whereof we have hereunto set our hands and seals the day and year first above written.                                                                    P. N. MARKER.

"C. A. MERRILL.

"In presence of H. L. FISH."

On the same day, and as a part of the same transaction, complainant executed and delivered to respondent a note secured by mortgage on his undivided one-half interest in the property, (which is the note and mortgage sought to be canceled in this action.) Complainant never tendered respondent the amount of money, or any part thereof, agreed upon for the purchase of said interest, and no sale of the respondent's interest was ever made. On the 24th day of March, 1884, complainant sold an undivided one-tenth interest in the property to William Reynor. On the 29th day of April, 1884, the respondent, at complainant's request, rendered a statement of the amounts of money advanced by him up to that date under the agreements. This statement shows that the sum of $16,416.47 had been expended prior to November 29, 1882, and the total amount up to April 29, 1884, was $23,569.75. On the 12th day of July, 1884, complainant made a conveyance of his interest in the property of the Lassen County Land & Cattle Company, a corporation, of which he was the principal stockholder. On the 29th of September, 1888, complainant sold all his right, title, and interest in the property to B. F. Porter, and on the 19th day of October, 1888, Reynor conveyed his interest in the property to Porter. After the answer of respondent was filed, setting up these subsequent conveyances, and after considerable testimony had been taken, respondent moved this court to make the corporation and the other persons named in said conveyances parties to this suit. This motion was denied by Judge SAWYER. The testimony in this case covers all the transactions had by the corporation and other parties with complainant, and the amount of money expended by them upon the property. Respondent had nothing to do with these transactions. Whatever the rights of these parties as against respondent may be, as a co-tenant in the property, it is apparent that they cannot be settled or determined in this action. Complainant, having disposed of all his interest in the property on the 12th of July, 1884, cannot demand an accounting of any moneys expended on the property after that date, by persons or corporations who are not parties to this suit. The motion refusing to make them parties necessarily carries with it the duty of this court not to consider any matters concerning the expenditure of money on the property after such parties had obtained the title of complainant thereto. Upon well-settled principles of equity jurisprudence this court cannot proceed to the settlement of accounts between other co-tenants who are not parties to this action.

Eliminating from this suit all the testimony which bears upon the subsequent matters referred to, we shall proceed to a consideration of the agreements and contracts between the parties complainant and respond-

ent. The contention of complainant is that respondent was only a conditional purchaser, subject only to the covenants specified in the agreement of 1881, and that he failed and refused to comply with said conditions, and therefore forfeited his interest in the property; that the contract of October 15, 1883, was the result of a compromise, and that the accounts and compensation agreed upon by the parties was to be binding only upon the condition that respondent performed the stipulations as to the payment of the existing and outstanding indebtedness against the property, and that respondent forfeited all his rights under this agreement by failing to comply with its provisions in this respect. On the other hand, the contention of respondent is (1) that he fully complied with all the covenants and conditions expressed in the agreement of April, 1881; (2) that the agreement of 1883 constitutes a final settlement of the business between the parties; (3) that said agreement admits that respondent complied with all of the covenants and conditions of the agreement of 1881, as to the expenditure of the sum of $16,000; and (4) that the mortgage executed by complainant to respondent for $5,250 was to cover and secure the complainant's one-half of the expenditures made by the respondent in excess of said sum of $16,000. The agreement of 1883 was drawn, as we have before stated, after much difficulty, discussion, and deliberation between the respective parties. At the time of its execution they were aware of all the troubles, disputes, and controversies that had previously existed, both as to the manner of the expenditure of the money and the amounts that had been advanced. They were put upon notice that it was necessary to make the second agreement clear, specific, and unambiguous, leaving nothing open for any further dispute. All the testimony bearing upon this subject clearly shows that the entire matter was fully discussed before the agreement was drawn; that the various accounts for money expended by respondent were noted down and figured up by the parties, or by others in their presence, and agreed to as correct; that the statements of these accounts thus made was left with complainant, but upon the trial could not be found; and that, as a result of this examination of the accounts and of the giving of the note and mortgage, the following clause was inserted in the agreement, viz.:

"The said sum of $22,750.00, above written, being hereby agreed as a stated balance of money heretofore advanced and expended by said party of the first part (respondent) upon the whole of said property, of which an undivided one-half is herein described, and under an agreement heretofore made between the parties hereto, and bearing date the ——— day of April, A. D. 1881."

From the great mass of testimony touching what took place at that time between the parties, I select a brief part of the testimony of Gen. Alexander, who acted as the friend and attorney for both parties in drawing the agreement, believing it to be—from an examination of all the testimony—a correct statement of what then transpired:

"After the deed was written by me, and was ready to be signed and executed, the plaintiff said in substance: 'I am satisfied that I can get the money that you have expended upon this property, as well as to pay any out-

standing claims, including my own, from these parties with whom I am dealing; but this deed, if given to you, will leave me no control of the property, and would practically give me no show.' The deed was then torn up, and another arrangement in the direction of a contract and obligation from the plaintiff was suggested, the parties being both present. * * * I told them that I had drawn a deed and torn it up at their request, and that that was a mere waste of time, for which somebody would have to pay, and that they had better conclude what they wanted to do, and tell me, and I would put it in writing for them. * * * Thereupon Merrill and Marker proceeded in my presence to review and discuss the accounts of expenditures made by Marker upon the property known as the 'Eagle Lake Tunnel Company's Property' under his contract written by me April 8, 1881. Mr. Marker stated, either from memory or statements, the amount of money that he had expended upon this property, as taken from his books, which was not in any wise objected to. The parties then considered and discussed other items which had been expended by the defendant, Marker, upon portions of this property, and which was all considered and conceded to be a part of the scheme or enterprise. I remember that the plaintiff, Merrill, disputed the amount claimed by Marker to have been paid on account of improvements on section 31, contending that the work had not amounted to anything like that sum, and, as I remember, he would not give a hundred dollars for what had been done. Defendant, Marker, replied that it did not make any difference whether he would give a hundred dollars for it; that he, Marker, knew it had cost him so much money. These various items, which I cannot undertake to remember, and do not pretend to, were discussed in that way between the parties, including the amount as shown or stated by Marker as taken from his book; and they were agreed upon; and the sum total of those items was $22,750. I was directed to draw a contract of sale as it is drawn, and it was then and there stated and agreed that the contract, while carrying with it the option that it did carry, should still settle the business between those two parties prior to that date. I was so directed to write it, and I did so write it. *Question.* By both parties here, plaintiff as well as defendant? *Answer.* Yes, sir. * * * At that time it was conceded by both parties, or agreed between them, that the defendant, Marker, had expended more money than he had been called upon to do by his contract, and that further expenditures would be an additional burden upon plaintiff as well as defendant, and that they should cease, pending anything that plaintiff could do under that contract which he received on that date. *Q.* Do with respect to what? *A.* The sale of the property, and the still remaining outstanding indebtedness which was known to both parties, and which was at that time as near as might be agreed upon after discussion and figuring the same from their joint information. * * * These two parties agreed upon giving the note and mortgage for $5,250, to cover the plaintiff's individual bills and his portion of the remaining moneys due from the property which he was unable to pay. I drew that mortgage the same day, and as part of the same transaction."

In the light of all the testimony, it seems to me that a court of equity ought not to be called upon, after the expiration of eight or ten years, to readjust the accounts which they then agreed to be a stated balance between them. The parties were not ignorant or inexperienced men. They then understood their own affairs, and had intelligence enough to at least detect any errors, if any there were made by either party. They had full knowledge of each other's method of transacting business. They deliberately agreed that respondent had expended the amount of money mentioned in the agreement of 1881. The note and mortgage was volun-

v.47 f.no.3—10

tarily given by complainant for an estimated balance that respondent had either paid or agreed to pay. All the presumptions are in favor of the fairness and correctness of the accounts as then agreed upon. Why should complainant voluntarily give the security he then did if respondent had not complied with the contract of 1881? If respondent had failed to comply with the agreement of 1881, why trust him with the note and mortgage under his mere verbal promise to pay certain other debts? There is no question of any fraud, imposition, or undue advantage taken by either party in procuring the agreement of 1883. The parties were men of intelligence in worldly affairs and business enterprises, and, having once settled their affairs, they should abide by it, instead of appealing to a court of equity to decide whether each item expended by respondent under the agreement of 1881 was actually expended by the mutual consent of both parties. The account rendered to complainant on the 29th of April, 1884, showed that $23,569.75 had been expended by respondent. Of this amount $17,578.21 was paid prior to October 15, 1883, and $5,991.54 paid subsequent to October 15, 1883, and prior to the date of rendering the account. Subsequent to the rendition of the account of April 29, 1884, respondent paid a judgment in favor of Green & Asher, which was one of the accounts respondent agreed to pay, and also advanced to complainant the further sum of $510. This makes a total of $26,231.09, or $10,231.09 more than he had agreed to advance under the agreement of 1881. There are other items of account claimed to have been advanced by respondent under the agreement of 1883, which would increase the amount over $10,500. I refer to these accounts to show that they substantially correspond with the testimony that the agreement of 1883 was intended as a stated and settled account between the parties, and that the note and mortgage for $5,250 was given to secure respondent for the one-half of the amount of money advanced by him in excess of the sum of $16,000, stated in the agreement of 1881.

The account rendered by complainant for $29,724.50 relates almost exclusively to matters subsequent to the formation of the corporation of the Lassen Land & Cattle Company. The exceptions are: (1) "Account for personal expenses in San Francisco, and on the road, while working for the firm in trying to dispose of the firm property and to raise money to carry on the business of the firm from Dec. 26th, 1882, [the date Merrill came to San Francisco at Marker's request,] to June 6th, 1887, [the date Marker published dissolution of partnership,] 4 years, 5 months, and 10 days, total time, 1,620 days, at $5 per day, $8,100." (2) Four items of expenses of making various trips and taking parties to Lassen county to examine the property, amounting in the aggregate to $450; making a total of $8,550. The first item is charged upon the ground, as claimed in the oral argument of complainant's counsel, upon the theory that respondent is liable for the services rendered and expense incurred by complainant with a view to sell the respondent's interest under the agreement of 1883. Complainant testifies that he was personally engaged in this business for a period of 1,620

days, and his counsel claimed that his talent, energy, industry, ability, and enterprise were at least worth $5 per day. After a thorough examination of all the testimony bearing upon this point, I fail to discover sufficient testimony to warrant the conclusion of counsel that respondent employed complainant to perform any such service, or any facts that would justify the court in allowing this claim. Without attempting to review the testimony, it is enough to say that the facts in relation to this charge are, in my judgment, sufficient to warrant the contention of respondent's counsel that this charge was an after-thought upon the part of complainant. No claim whatever was made by complainant in this respect for any services rendered prior to the agreement of 1883 at the time that agreement was made, and no demand of this kind was ever made upon respondent until after the bringing of this suit. On the other hand, the record shows, and complainant admits, that respondent, after December 26, 1882, advanced various sums of money, amounting in the aggregate to over $500, for personal expenses, and this is all that complainant asked for in relation to this matter before the commencement of this suit. Prior to December 26, 1882, respondent had advanced to complainant various sums amounting to over $4,000, and after the execution of the agreement he paid a judgment against complainant for $656. The total amount of money that complainant individually received from respondent prior to the formation of the corporation was over $5,000. Respondent has never made any claim for his services, and under the agreements between the parties all that either could legally claim would be for the actual expenses incurred in traveling to and fro in conducting the business of the joint enterprise. The account rendered by complainant, as above stated, is disallowed. Respondent's conduct after the agreement of 1883 is by no means free from criticism. His stubbornness and delay in paying off a portion of the indebtedness then existing against the property is sufficient to authorize a court of equity to decree that he should be held responsible for his proportion of the costs in this action. The judgment and decree of this court is that the deed from complainant to respondent, executed April 8, 1881, for an undivided one-half interest in the property, is valid; that the decree prayed for by complainant for a reconveyance of said property be denied; that the note and mortgage executed and delivered by complainant to respondent on the 15th day of October, 1883, is valid; that the decree prayed for by complainant to cancel said note and mortgage be denied; that each party to this suit pay his own costs. Let a decree be entered accordingly.