## MORRISON v. MARKER et al.

(Circuit Court, N. D. California. April 10, 1899.)

No. 12,651.

1. FEDERAL COURTS—JURISDICTION OF PARTIES—SUITS RELATING TO PROPERTY.
    A suit brought in a circuit court of the United States by a purchaser of real estate in the district at execution sale, to cancel and set aside a prior conveyance made by the judgment debtor as a cloud on his title, is essentially a suit in rem, and within the provisions of section 8 of the act of March 3, 1875 (18 Stat. 472), authorizing the bringing in by order of parties defendant who reside without the district in such cases.

2. SAME—EQUITABLE JURISDICTION—ADEQUATE REMEDY AT LAW.
    A circuit court of the United States, as a court of equity, cannot entertain a suit by a purchaser of real estate at execution sale who is not in possession, to set aside a prior conveyance made by the judgment debtor as a cloud on complainant's title, on the ground that such conveyance was in fraud of creditors, although such a suit is permitted by a state statute. If the conveyance sought to be set aside was fraudulent, it was void as to creditors, and the complainant, by his purchase, acquired the legal title, and has a plain, adequate, and complete remedy at law, by an action in ejectment.

On motion for an order vacating an order directing the defendants to appear or plead, and to dismiss the suit.

John E. Richards and Louis P. Boardman, for complainant.
Deal, Tauszky & Wells, for defendants.

MORROW, Circuit Judge. The character of this suit is in contro-
versy. The complainant contends that it is a suit in equity to remove
a cloud and quiet the title to certain real estate. The defendants
contend that it is in the nature of a creditors' bill to set aside a fraudu-
lent conveyance, and is a personal action. The question is deemed
by the parties to be material in determining whether the court has ob-
tained jurisdiction over the defendants by the service of process in the
action. The complainant is a citizen of the state of California, and a
resident of the Southern district. Both of the defendants are citizens
and residents of the state of Nevada. The property involved in the
action consists of certain real estate and water rights located in Lassen
county, in this district. The defendants were served with an order
to appear, plead, answer, or demur to the bill of complaint, under the
provisions of section 8 of the act of March 3, 1875 (18 Stat. 472), which
provides:

"That when in any suit, commenced in any circuit court of the United
States, to enforce any legal or equitable lien upon, or claim to, or to remove
any incumbrance or lien or cloud upon the title to real or personal property
within the district where such suit is brought, one or more of the defendants
therein shall not be an inhabitant of, or found within, the said district, or
shall not voluntarily appear thereto, it shall be lawful for the court to make
an order directing such absent defendant or defendants to appear, plead, an-
swer, or demur, by a day certain to be designated, which order shall be
served on such absent defendant or defendants, if practicable, wherever found,
and also upon the person or persons in possession or charge of said property,
if any there be; or where such personal service upon such absent defendant
or defendants is not practicable, such order shall be published in such man-
ner as the court may direct, not less than once a week for six consecutive
weeks. * * * But said adjudication shall, as regards said absent defend-
ant or defendants without appearance, affect only the property which shall
have been the subject of the suit and under the jurisdiction of the court there-
in, within such district."

It appears from the bill of complaint that, prior to the year 1889,
the defendant P. N. Marker and one Charles A. Merrill were in posses-
sion of certain real property, water rights, and premises in Lassen
county, in this state. A controversy arose between them in relation
to their rights and interests in the property, and on February 20,
1889, Merrill brought suit against Marker in the superior court of the
state in and for the county of Lassen, to determine such rights. The
suit was transferred to this court, and resulted in a judgment and de-
cree ordered on July 27, 1891, in favor of the defendant Marker. 47
Fed. 138. A decree in accordance with the order was entered on
September 5, 1891. To defend this suit, Marker entered into a contract
with John F. Alexander, an attorney, on the 5th day of May, 1889,
wherein it was agreed between the parties that Alexander would ren-
der professional services in defense of the suit, and at its termination
Marker would sell the real property, water rights, and premises, or
otherwise realize money thereon, out of which he would pay Alexander
the reasonable value and compensation for his legal services, counsel,
and advice. It is alleged that Alexander fully performed the serv-
ices, in accordance with the terms of the contract, between the 5th day
of May, 1889, and the 1st day of February, 1891. On the 19th day
of May, 1891, Alexander died, at Riverside, in this state. At that time,

he appears to have completed his professional services in the case, although the decree of the court in the suit in which he was employed was not entered until some months later. On the 3d day of December, 1895, Mrs. R. H. Hickman was appointed, and qualified, as administratrix of the estate of Alexander, and on the 3d day of February, 1896, she, as such administratrix, commenced an action in the superior court of California in and for the city and county of San Francisco to recover from Marker the value of the services rendered Marker by Alexander in the case of Merrill v. Marker, for necessary expenses incurred therein, and for other legal services rendered by Alexander. One week after the commencement of this action, to wit, on the 10th of February, 1896, and while the suit was still pending, Marker conveyed all the said real property, water rights, and premises in Lassen county to his attorney, B. F. Curler, by a bargain and sale deed. It is alleged that this deed was made by Marker for the purpose of hindering, delaying, and defrauding the plaintiff in said action out of the just debts and demands alleged and sought to be recovered therein, and to avoid the payment of his indebtedness with respect to the contract for services made with Alexander. The deed from Marker to Curler was duly recorded in the records of Lassen county. Mrs. Hickman died on the 26th day of June, 1896, and before the termination of the suit instituted by her as administratrix. The complainant herein, William A. Morrison, was thereafter, on the 21st day of July, 1896, appointed administrator of the estate of Alexander, and on the 11th day of September, 1896, was duly substituted as plaintiff in said action. Thereupon he prosecuted the suit to a judgment, which was entered on October 14, 1896, against P. N. Marker, for the sum of $5,683. Complainant caused execution to issue upon his judgment on January 19, 1897, and levy to be made upon the property in Lassen county, which property was sold at sheriff's sale on February 27, 1897; and at that sale the complainant purchased the right, title, and interest of Marker in and to the property, for the sum of $4,700. The property was not redeemed, and on the 17th day of June, 1898, the sheriff issued to complainant a bargain and sale deed for the same, under which complainant claims to be the lawful holder and owner of the said real property, water rights, and premises, and to be entitled to the possession thereof. It is alleged that Marker is wholly insolvent, and unable to pay his debts; that there is no other property in the state from which the judgment can be recovered than that conveyed by deed from Marker to Curler on February 10, 1896; that the defendant Curler knew the fraudulent character of the deed from Marker to him; that he has not transferred or conveyed any interest in said property purported to be conveyed to him by said deed; and that the said deed is now a cloud upon complainant's title to the said property. Complainant asks for a decree declaring the deed executed by Marker to Curler to be fraudulent and void, and that it be canceled and annulled of record; that complainant be adjudged to have a good and valid title to the property in controversy, by virtue of the said sheriff's deed; and that the title of complainant be forever quieted. The original bill was filed herein July 9, 1898, and an amended bill on October 18, 1898, when the order was made by this court directing the defendants to appear or

plead herein, which order defendants now move to have vacated and set aside, and also for an order dismissing the suit.

It is contended on the part of the defendants, in support of the motion to set aside the special order of service, that this is a personal action against them to cancel and set aside the deed of February 10, 1896, as being in fraud of the rights of the estate of Alexander, and therefore not within the purview of the publication act of March 3, 1875. But it is clear that the purpose of the suit is something more than a personal action to cancel a written instrument fraudulently executed; it is to remove a cloud from the title to real estate situated in this district, and is therefore obviously within the provisions of the statute. Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124. The motion to dismiss the suit is based upon the allegations of the bill showing that the plaintiff is not in possession of the property. This raises the question whether it is necessary for the complainant in a suit of this character to show, by an averment in the bill, that he is in possession of the premises. In Orton v. Smith, 18 How. 263, 265, the supreme court held that those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title. In U. S. v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, the suit was in equity to have the conveyance of an adverse title declared fraudulent and void, and removed as a cloud on complainant's title. The court said:

"Having the legal title, then, but being kept out of possession by defendant's holding adversely, the remedy of the United States is at law to recover possession. Equity in such cases has no jurisdiction, unless its aid is required to remove obstacles which prevent a successful resort to an action of ejectment, or when, after repeated actions at law, its jurisdiction is invoked to prevent a multiplicity of suits, or there are other specific equitable grounds for relief. Bills quia timet, such as this is, to remove a cloud from a legal title, cannot be brought by one not in possession of the real estate in controversy, because the law gives a remedy by ejectment, which is plain, adequate, and complete. This is the familiar doctrine of this court. Hipp v. Babin, 19 How. 271; Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327; Killian v. Ebbinghaus, 110 U. S. 568, 4 Sup. Ct. 232; Fussell v. Gregg, 113 U. S. 550, 555, 5 Sup. Ct. 631."

This doctrine was again declared in Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. 1129, 1131; the court saying:

"A person out of possession cannot maintain such a bill [a bill to remove a cloud upon title, and to quiet the possession of real estate], whether his title is legal or equitable; for, if his title is legal, his remedy at law, by action of ejectment, is plain, adequate, and complete; and, if his title is equitable, he must acquire the legal title, and then bring ejectment."

It is contended, however, on the part of the complainant, that section 738 of the Code of Civil Procedure of this state gives a right of action to determine and quiet the title to real property to any one having or claiming an interest therein, whether in or out of possession of the same. The section provides as follows:

"An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim."

It is claimed that this statute creates a new right, and prescribes a remedy for enforcing it which may be pursued in a court of the United States. This precise question was before the supreme court of the United States in Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, where it was held that a similar provision in the Code of Iowa, although construed by the courts of that state as authorizing a suit in equity to recover possession of real estate from the occupant in possession of it, does not enlarge the equity jurisdiction of federal courts in that state so as to give them jurisdiction over a suit in equity in a case where a plain, adequate, and complete remedy may be had at law. A deed in fraud of the rights of creditors was absolutely void, as against them, under the English statutes of 13 Eliz. c. 5, and 27 Eliz. c. 4, and these acts have been considered as only declaratory of the common law. Lord Mansfield, in Cadogan v. Kennett, Cowp. 432, and Chief Justice Marshall, in Hamilton v. Russell, 1 Cranch, 309, 316. The statute of California upon the subject of fraudulent conveyances is embodied in section 3439 of the Civil Code, as follows:

"Every transfer of property or charge therein made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Where a conveyance has been made with intent to delay or defraud creditors, the creditors are authorized to levy upon and sell the property as if no conveyance had ever been made by the creditor. Bull v. Ford, 66 Cal. 176, 4 Pac. 1175. In Freem. Ex'ns, § 136, the law is clearly stated, as follows:

"Whoever goes out with an execution to seek the fruits of his judgment is too apt to find that fraud has forestalled him. It then becomes his business to pursue those fruits, wherever fraud has taken them; to wrest them from the possession of his adversary, wherever they may be found; and to prepare himself to show that the refuge whence he has wrested them is still the refuge of fraud. In many instances, the aid of equity is invoked; but generally this is unnecessary; for a transfer made to hinder, delay, or defraud creditors, while, as between the parties, it conveys the title, has, as against a creditor proceeding under execution, no such effect. As against the fraudulent transferee, the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution. The title transferred by such sale is not a mere equity,—not the right to control the legal title, and to have the fraudulent transfer vacated by some appropriate proceeding; it is the legal title itself, against which the fraudulent transfer is no transfer at all."

As was said in Smith's Ex'r v. Cockrell, 66 Ala. 64, 82:

"If property of a debtor has been conveyed by him with intent to delay, hinder, and defraud his creditors, it remains, as to his debts, as if no attempt had ever been made to convey it. As to creditors, and those claiming under them and in their right, the legal title remains in the judgment debtor until the sale and conveyance by the sheriff, and then it passes to the purchaser. This, because the fraudulent conveyance is treated as a nullity,—as if it had never been. The purchaser's title is legal, or it is nothing. If the debtor's conveyance, in defiance of which he purchased, is fraudulent, then his title acquired at the sheriff's sale is legal, without a semblance of an equitable title entering into it. So, if the debtor's conveyance is not fraudulent, the purchaser has no title, legal or equitable."

In the present case it is not alleged in the bill of complaint that there are any impediments or obstructions, other than the fraudulent deed, that will prevent the complainant from obtaining a plain, adequate, and complete remedy at law; and it is clear, upon principle and authority, that the cancellation of this deed is not a sufficient ground to give this court equitable jurisdiction of the controversy. The provision in section 8 of the act of March 3, 1875, requiring that the order of the court directing the absent defendants to appear, plead, answer, or demur shall be served on such absent defendants, "and also upon the person or persons in possession or charge of said property, if any there be," cannot be held as in any way affecting the equitable jurisdiction of the circuit court. The service here provided would be necessary and appropriate, under the statute, where the complainant out of possession is seeking, by an action at law, to enforce a legal claim to real or personal property within the jurisdiction of the court; but it would be manifestly ineffective to give the court an equitable jurisdiction which it does not otherwise possess. It follows that the bill of complaint does not state a case within the equity jurisdiction of the court, and it must therefore be dismissed; and it is so ordered.