# PARSONS *v.* VENZKE.

ERROR TO THE DISTRICT COURT OF RICHLAND COUNTY, STATE OF
NORTH DAKOTA.

No. 264. Submitted October 13, 1896. — Decided November 2, 1896.

The action of local land officers on charges of fraud in the final proof of a
preëmption claim does not conclude the government, as the General
Land Office has jurisdiction to supervise such action, or correct any
wrongs done in the entry. *Orchard* v. *Alexander*, 157 U. S. 372, af-
firmed and followed to this point.

The jurisdiction of the General Land Office in this respect is not arbitrary
or unlimited, or to be exercised without notice to the parties interested;
nor is it one beyond judicial review, under the same conditions as
other orders and rulings of the land department.

The seventh section of the act of March 3, 1891, c. 561, 26 Stat. 1098, pro-
viding that "all entries made under the preëmption, homestead, desert-
land or timber culture laws, in which final proof and payment may have
been made and certificates issued, and to which there are no adverse
claims originating prior to final entry and which have been sold or in-
cumbered prior to the first day of March, eighteen hundred and eighty-
eight, and after final entry, to *bona fide* purchasers, or incumbrancers,
for a valuable consideration, shall, unless upon an investigation by a
government agent, fraud on the part of the purchaser has been found,
be confirmed and patented upon presentation of satisfactory proof to
the land department of such sale or incumbrance," refers only to
existing entries, and does not reach a case like the present, where the
action of the land department in cancelling the entry and restoring the
land to the public domain took place before the passage of the act.

ON July 25, 1892, the United States issued a patent for the
land in controversy to Gustav Venzke, one of the defendants
in error. The other defendants in error are his mortgagees.
On January 11, 1883, one Willis B. Simpkins made a pre-
emption entry of the land, and received a receiver's final
receipt, the land at that time being public and subject to pre-
emption entry under the laws of the United States. On Feb-
ruary 8, 1883, he conveyed the land to Charles J. Wolfe,
through whom, by foreclosure of a mortgage, plaintiff in error
acquired her title.

On September 26, 1884, W. W. McIlvain, a special agent of the land department of the United States, reported to the Commissioner of the General Land Office at Washington, as the result of his investigations, that the preëmption entry of Simpkins had been fraudulently and unlawfully made. Proceedings for an investigation of this charge were ordered before the local land officers. Notice was duly given by publication. Simpkins made no appearance, but the plaintiff in error appeared by attorneys. The investigation was carried on in the local land office and thereafter in the General Land Office at Washington, and the proceedings reviewed by the Secretary of the Interior, the plaintiff in error being a party to all those proceedings. They resulted in a cancellation of the entry on the ground that it had been fraudulently and unlawfully made; and the land was restored to the public domain.

Thereafter Venzke took the proceedings which culminated in the patent; whereupon the plaintiff in error commenced this suit in the District Court of Richland County, North Dakota, to have him charged as trustee of the legal title for her benefit. In that court a decree was entered in favor of the defendants, which, having been affirmed by the Supreme Court of the State, has been brought here on writ of error.

On March 3, 1891, Congress passed an act, c. 561, 26 Stat. 1095, 1098, § 7 of which contains this provision:

"And all entries made under the preëmption, homestead, desert-land or timber culture laws, in which final proof and payment may have been made and certificates issued, and to which there are no adverse claims originating prior to final entry and which have been sold or incumbered prior to the first day of March, eighteen hundred and eighty-eight, and after final entry, to *bona fide* purchasers, or incumbrancers, for a valuable consideration, shall, unless, upon an investigation by a government agent, fraud on the part of the purchaser has been found, be confirmed and patented upon presentation of satisfactory proof to the land department of such sale or incumbrance."

*Mr. Seth Newman* for plaintiff in error.    *Mr. S. B. Pinney* and *Mr. J. E. Robinson* were on his brief.

*Mr. W. H. Standish* for defendants in error.    *Mr. S. H. Snyder* and *Mr. Curtiss Sweigle* were on his brief.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Counsel for plaintiff in error challenge the power of the Commissioner of the General Land Office or the Secretary of the Interior to cancel and set aside a preëmption entry after the local land officers have approved the evidences offered of settlement and improvement, received the purchase money and issued the receiver's final receipt.  They contend that except in certain specified cases, which are not material for consideration here, the action of the local land officers concludes the government, and the General Land Office has no jurisdiction to supervise such action or correct any wrongs done in the entry.

Subsequently to the issuing of the writ of error in this case this precise question was presented to this court, *Orchard v. Alexander*, 157 U. S. 372, and the jurisdiction of the land department was affirmed; a jurisdiction not arbitrary or unlimited, nor to be exercised without notice to the parties interested, nor one beyond judicial review under the same conditions as other orders and rulings of the land department.

In this case the entryman was brought in by due publication of notice, and the real party in interest appeared.   The contest was carried through the land department, from the lowest to the highest officer, and there is nothing in the record which brings the case within the rules so often laid down for a judicial reversal of the decisions of that department.

Much reliance is placed upon the seventh section of the act of March 3, 1891, *supra*, and it is contended that before any adverse rights were created Congress ratified and confirmed the entry made by Simpkins.   We think that statute inapplicable.   It was passed long after the action of the land department in cancelling the entry and restoring the land to the

public domain, and when there was no subsisting entry to be confirmed. The theory of the plaintiff in error is that the act applies to all entries which had ever been made prior thereto, whether subsisting or cancelled. But clearly it refers to only subsisting entries. An entry is a contract. Whenever the local land officers approve the evidences of settlement and improvement and receive the cash price they issue a receiver's receipt. Thereby a contract is entered into between the United States and the preëmptor, and that contract is known as an entry. It may be, like other contracts, voidable; and is voidable if fraudulently and unlawfully made. The effect of the entry is to segregate the land entered from the public domain, and while subject to such entry it cannot be appropriated to any other person, or for any other purposes. It would not pass under a land grant, no matter how irregular or fraudulent the entry. When by due proceedings in the proper tribunal the entry is set aside and cancelled, the contract is also terminated. The voidable contract has been avoided. There is no longer a contract, no longer an entry, and the land is as free for disposal by the land department as though no entry had ever been attempted. The term used in the section, "confirmed," implies existing contracts which, though voidable, have not been avoided, and not contracts which once existed but have long since ceased to be. If the act is not limited to existing entries, existing contracts, then it must apply to all entries, all contracts, no matter when made or how long since cancelled, or what rights have been acquired by others since the cancellation. It would apply to an entry cancelled years before, although the land had since been entered and patented to another; and would carry a mandate to the land department to execute a patent to one whose claims had been adjudged fraudulent, and in disregard of the rights created in reliance upon that adjudication. No such intention can be imputed to Congress. The statute, as its language implies, refers only to existing entries, and does not reach a case like the present.

The judgment is

*Affirmed.*