COSMOS EXPLORATION CO. v. GRAY EAGLE OIL CO. et al.

PACIFIC LAND & IMPROVEMENT CO. v. ELWOOD OIL CO. et al.

(Circuit Court of Appeals, Ninth Circuit. November 15, 1901.)

Nos. 671, 672.

1. PUBLIC LANDS—JURISDICTION OF COURTS.

The federal courts are without jurisdiction to entertain a suit to determine the respective rights of the parties in land the title to which remains in the United States, and in regard to which a contest between the parties is pending in the land department.

2. EQUITY JURISDICTION—FEDERAL COURTS—SUIT TO RECOVER POSSESSION OF LANDS.

A federal court of equity is without jurisdiction of a suit to determine the title or right of possession to lands brought by one who is out of possession against a claimant in possession, and averments in a bill that defendant has drilled oil wells on the land, and is taking oil therefrom, against which an injunction is prayed, are, in effect, averments that defendant is in possession, and render the bill subject to demurrer, as in purpose and effect an ejectment bill.

3. PUBLIC LANDS—EXCHANGE UNDER FOREST RESERVATION ACT—LANDS SUBJECT TO SELECTION.

Public lands are "vacant and open to settlement," and therefore subject to selection in lieu of relinquished forest reserve lands covered by patent, under Act June 4, 1897 (30 Stat. 36), only when they are unoccupied by others, are free from other claim of record, and are nonmineral in character. It devolves on the person making the selection to establish such facts by proof, so far as they are not shown by the records.

4. SAME—LAND OFFICE REGULATIONS.

The commissioner of the general land office has authority to make regulations respecting disposal of the public lands, and such regulations, when not repugnant to the act of Congress, have the force and effect of law. The regulations of the commissioner relative to lieu land selections under the act of June 4, 1897 (prescribed June 30, 1897), are reasonable and are intended and well calculated to carry into effect the intent and true meaning of the act of Congress, and should be complied with.

5. SAME—VACANT LANDS—OCCUPANCY BY EXPLORER FOR MINERALS.

Land was not "vacant and open to settlement," and subject to selection under such act, where at the time of the application it was in the actual occupancy of others engaged in exploring it for oil, under oil placer mining locations previously made by them, although such locations did not appear by the records of the local land office, and although they were not valid as against the United States, because there had been no previous discovery of oil on the land, where the locators prosecuted the work of exploration with due diligence, and with the result of discovering oil in paying quantities before the selection by the applicant under the forest reserve act had been approved by the land department. While lawfully occupied by one engaged in making such exploration, either under an invalid location or without having made any location at all, land is not "vacant," within the meaning of the act; nor is it open to settlement where, as the result of such exploration, its mineral character is established, while the title, both legal and equitable, remains in the United States.

Gilbert, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of California.

The bill of complaint in the Pacific Land & Improvement Company against the Elwood Oil Company alleges, in substance: That the selection by complainant's predecessor in interest, one J. R. Johnston, on the 23d day of December, 1899, under the act of congress of June 4, 1897, entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1898, and for other purposes," of the E. ½ of the S. W. ¼ of section 4 in township 29 S., range 38 E., M. D. B. & M., containing 80 acres of land, and no more, in lieu of a tract of 80 acres of nonmineral land included within the limits of a public forest reservation, for which the United States has issued to him a patent, and which the said Johnston on December 20, 1899, under and pursuant to the provisions of said act of June 4, 1897, relinquished to the United States by deed of conveyance recorded in the office of the county recorder of the county in which said tract is situated, which Johnston delivered at the time of his lieu selection, on the 23d day of December, 1899, to the register and receiver of the land office at Visalia, Cal., within which the selected land is situate, which deed, indorsed as recorded as aforesaid, the said Johnston at the said time filed in said local land office, together with a full and correct abstract of his title to the relinquished tract, duly certified as such by the county recorder of the county in, which the tract is situated, showing him to be the owner thereof in fee, free from any incumbrance, at the time of such relinquishment, together with his nonmineral affidavit, and together with his selection of the E. ½ of the S. W. ¼ of said section 4 in lieu of the tract relinquished. That on the said 23d day of December, 1899, said register and receiver duly accepted and filed said deed, abstract of title, nonmineral affidavit, and selection of the said Johnston, and duly entered such selection upon the official records of his office. That the register did then and there certify that the tract so selected by the said Johnston was free from conflict; that there was no adverse filing, entry, or claim thereto; that the selected lands were, at the time of selection, unappropriated, vacant public lands of the United States, open to settlement, and returned by the surveyor general as agricultural in character; that such, lands, when selected, did not contain any known minerals or known petroleum or known mineral oils; that no mineral, petroleum, or known mineral oil, or mineral substance of any kind, had ever been discovered within the limits thereof. That on April 11, 1900, Johnston conveyed the tract so selected, and all his right, title, and interest therein, to the complainant, who has ever since been the owner thereof. That the defendants based their claim to the tract in controversy upon a certain pretended placer mining location covering the S. W. ¼ of said section 4, alleged to have been made on June 11, 1899, under the mining laws of the United States, by eight named persons, whose interests the defendants claimed to have acquired by mesne conveyances. That said location was void for the reason that no discovery of oil or other mineral was made within its limits until after the selection, by said Johnston as aforesaid. That, after the lands in controversy were selected by said Johnston, certain of the defendants filed in the local land office at Visalia a written, verified protest against such selection, wherein it was alleged that said lands were not subject to selection under said act, for the reason that the same was mineral land, and was included within the boundaries of a valid placer location. That said protest prayed that the commissioner of the general land office order a hearing to determine the mineral character of said lands, and that the selection thereof made by said Johnston be rejected. That said protest is pending before the commissioner of the general land office. That the same is insufficient to justify a hearing being ordered by the land department to determine the character of said land, or to change its classification as fixed by the report of the surveyor general, for the reason that the same does not show that there was any known mine or any known salines or any known or existing petroleum wells or known petroleum deposits on the selected land at the time of its selection, showing the same to be more valuable for mining than agricultural or other purposes. That notwithstanding Johnston acquired the complete equitable title to the land in controversy by his selection thereof, and notwithstanding that he was entitled to the complete and uninterrupted enjoyment

and possession of the same, the defendants, against the will of the said Johnston, knowing that said land had been selected by him under the act of congress aforesaid, and knowing his rights in the premises, without any right in themselves, or any of them, did, on or about the 6th day of January, 1900, by themselves and their employés, without right, and wrongfully and unlawfully, and without the knowledge or consent of said Johnston, and in disregard of his rights, enter upon and became possessed of the lands in question, and erected a derrick and other machinery thereon, and proceeded to excavate the soil thereof and to bore, a well therein, seeking for petroleum oil therein, for the purpose of taking the same, if found, to their own use, and removing the same. That afterward, about the last of January, 1900, the defendants found in said well petroleum oil in profitable quantities, and that they are engaged in wrongfully and unlawfully pumping large quantities of oil from said well, and removing the same from said lands, and selling and disposing of and marketing the same, and appropriating the proceeds thereof to their own use, and will continue to do so, to the great waste and irreparable injury of said premises, unless restrained therefrom by order of injunction, and that, unless restrained by order of the court, the defendants will bore other wells upon said premises, and, if successful in obtaining petroleum therein, will take such petroleum therefrom and market the same for their own use and benefit, and that complainant has no complete or adequate legal remedy against the wrongs complained of. The prayer of the bill is for a temporary injunction, restraining the defendants from further boring of wells upon the premises and the further removing of oil therefrom, and that upon the final hearing such injunction be made perpetual. It also asks a decree adjudging that complainant has the full, complete, and equitable title to the premises; that the adverse claims of the defendants thereto are wholly without right and unfounded; that a receiver be appointed to take possession of the property, and preserve the same and the products thereof until the further order of the court; and for such other relief as may be proper in the premises. The act of congress of June 4, 1897, before referred to, contains, among other things, the following provisions: "That in cases in which a tract covered by an unperfected bona fide claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected: provided further, that in cases of unperfected claims the requirements of the laws respecting settlement, residence, improvements, and so forth are complied with on the new claims, credit being allowed for the time spent on the relinquished claims." 30 Stat. 36. To the bill of complaint the defendants interposed a demurrer upon the grounds: "(1) That enough does not appear upon the face of the bill to show this court's jurisdiction of the subject-matter of the suit; (2) that complainant has not, by its said bill, stated any cause entitling it to any relief against the defendants, or either of them; (3) that the said bill is altogether multifarious; (4) that it appeareth by the plaintiff's own showing, by the said bill, that it is not entitled to the relief prayed by the bill against these defendants, or either or of any of them, nor to any relief against these defendants, or either of them or any of them,"—and prays the judgment of the court whether they, or either of them, should be compelled to make any answer to the said bill. (C. C.) 104 Fed. 20.

Shirley C. Ward, Jefferson Chandler, and J. W. Swanwick (John H. Mitchell, John M. Thurston, and T. C. Van Ness, of counsel), for appellants.

Frank H. Short, J. S. Chapman, and C. Linkenbach (George W. Baker, of counsel), for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the foregoing facts, delivered the opinion of the court.

The legal questions involved in these cases on appeal are identical. The facts are substantially the same. There is no difference between them, so far as the demurrer to the bill is concerned, except in two particulars. The demurrer in the Pacific Land & Improvement case makes as one of its objections to the bill that it is multifarious. No such objection is urged against the bill in the Cosmos Exploration case. In the Pacific Land & Improvement case there was no amended application made in the land office. It stands upon the single application made on the 23d day of December, 1899. Following the course adopted by appellant's counsel, we shall confine the discussion to the Pacific Land & Improvement case, because, as was said by the court below, "these cases were heard together, and may be so considered and determined, as the principal questions involved are common to them both."

Upon the filing of the bill the court made an order requiring defendants to show cause, if any they had, why a preliminary injunction should not be granted as prayed for. The defendants appeared and interposed a demurrer to the bill. Upon the hearing of the rule to show cause a large number of affidavits were presented by both sides. The defendants in the meantime had answered the bill, and their answers were used as affidavits' upon the hearing of the rule to show cause. The demurrer was argued at the same time and submitted. Thereafter the court rendered its decision and decree, on September 24, 1900, "that the application for a receiver and for an injunction be, and the same hereby is, denied; that the demurrer be, and hereby is, sustained; and that the bill of complaint be dismissed at complainant's costs,"—and on September 26th entered its regular decree dismissing the bill. This appeal is taken only from the order and decree sustaining the demurrer and dismissing the bill. The discussion of these questions will be confined to the facts alleged in the bill.

Did the court err in sustaining the demurrer? Did it err in dismissing the bill? Does it appear upon the face of the bill that the circuit court had jurisdiction of the parties and the subject-matter of the suit? The contentions of the respective parties are clearly outlined by the several allegations contained in the bill of complaint, and the first and most important question that arises herein is whether or not appellant has by such averments "stated itself out of court." This is the vital point upon which the merits of this case, in so far as the demurrer is concerned, hinges.

The demurrer, interposed by defendants, questions the jurisdiction of the circuit court. We are of opinion that the federal courts are without jurisdiction to entertain a suit to determine the respective rights of the parties to any land to which the title remains in the government of the United States, in regard to which, as shown by the averments in the present bill, a contest between the parties is pending in the land department of the government. In Savage v. Worsham (C. C.) 104 Fed. 18, Judge Ross said:

"It would seem from the bill that the title to the land in question is still in the United States, and that the contest between complainant and respondent in respect to it is yet pending in the land department. If so, it is clear that the suit cannot be maintained. 'After the United States has parted with its title, and the individual has become vested with it, the equities subject to which he holds may be enforced, but not before.' Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424; Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800."

Humbird v. Avery (C. C.) 110 Fed. 465, 471.

An action of ejectment cannot be maintained in the courts of the United States on a merely equitable title. Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Carter v. Ruddy, 166 U. S. 493, 496, 17 Sup. Ct. 640, 41 L. Ed. 1090, and authorities there cited.

The averments in the bill, by whatever name it may be called, are susceptible of the construction that the defendants are in possession of the land in controversy. "It is true," as was said by Wellborn, J., in Gas Co. v. Miller (C. C.) 96 Fed. 12, 23, "that the bill does not, in terms, allege that the defendants are in possession, but the acts charged against the defendants are such as necessarily imply actual possession or occupancy of the land." While such a bill might be maintained under the state law, it is not cognizable by a federal court of equity, the remedy being at law.

In Erskine v. Oil Co. (C. C.) 80 Fed. 583, 585, Buffington, J., in discussing this question, said:

"While the bill does not, in words, pray to acquire possession of the wells, yet in substance and effect that is its purpose. It seeks to restrain respondent from operating the wells or taking the oil, and these acts are, where oil and gas are concerned, the essential attributes of possession. The supreme court of Pennsylvania, in the case of Gas Co. v. De Witt, 130 Pa. 250, 18 Atl. 725, 5 L. R. A. 733, after discussing the peculiar character of gas and oil and their production, say: 'The one who controls the gas [the subject-matter of the case before it] has it in his grasp, so to speak,—is the one who has possession in the legal as well as in the ordinary sense of the word.' A bill, then, which in substance would deprive one in possession of everything which constitutes possession, whatever it is in name, is in fact one to devest possession, or what is known as an 'ejectment bill.' * * * In the federal courts the line between law and equity, and consequently between legal and equitable rights and remedies, has been sharply defined, and strictly observed. The provision of the constitution vesting judicial powers 'in cases in law and equity * * * between citizens of different states' recognizes the distinction. A constitutional amendment insures the right of trial by jury 'in suits at common law when the value in controversy shall exceed twenty dollars,' and the sixteenth section of the judiciary act of 1789 provides 'that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law.' And to such length have these provisions been extended that it has been held (Allen v. Car Co., 139 U. S. 662, 11 Sup. Ct. 683, 35 L. Ed. 305): 'If the court, in looking at the proofs, found none of the matters which would make a proper case for equity, it would be the duty of the court to recognize the fact, and give it effect, though not raised by the pleadings nor suggested by counsel.' And rightly so, for we are here dealing with the constitutional right of the citizen, and, as was said by Mr. Justice Campbell in Hipp v. Babin, 19 How. 278, 15 L. Ed. 635, 'whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.' * * * After careful con-

sideration, we are of opinion complainants' title is wholly a legal one, that ample remedy exists at law, that there are no special facts or circumstances in this case calling for the exercise of equitable jurisdiction, and that the bill is an ejectment one. With a disposition on our part to, if possible, retain jurisdiction to dispose of the case by construing the will, and end the controversy between the parties, we are unable to do so. The cases of Hipp v. Babin, 19 How. 278, 15 L. Ed. 635; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, and others that might be referred to, block the way to a federal court assuming jurisdiction of what is, in substance and real purpose, an ejectment bill."

In Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, the bill of complaint, among other things, alleged that, notwithstanding complainant's ownership of the property and his right to its immediate possession and enjoyment, the defendants claimed title to it, and were in its possession, holding the same openly and adversely to him; that their claim of title was without foundation in law or at equity; and that it was made in fraud of the rights of the plaintiff. To this bill the defendants demurred on the ground, among others, that it appeared from it that the plaintiff had a plain, speedy, and adequate remedy at law, by ejectment, to recover the real property described, and that it showed no ground for equitable relief. The demurrer was sustained. In the course of the opinion the court said:

"The Code of Iowa enacts that 'an action to determine and quiet the title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto, though not in possession,' implying that the action may be brought against one in possession of the property. And such has been the construction of the provision by the courts of that state. * * * If that be its meaning, an action like the present can be maintained in the courts of that state, where equitable and legal remedies are enforced by the same system of procedure and by the same tribunals. It thus enlarges the powers of a court of equity, as exercised in the state courts; but the law of that state cannot control the proceedings in the federal courts, so as to do away with the force of the law of congress declaring that 'suits in equity shall not be sustained in either of the courts of the United States, in any case where a plain, adequate and complete remedy may be had at law,' or the constitutional right of parties in actions at law to a trial by a jury."

The opinion in that case was written by Mr. Justice Field, who also wrote the opinion in Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, relied upon by appellant, and he explains and distinguishes that case from the one under consideration.

In Black v. Jackson, 177 U. S. 349, 361, 20 Sup. Ct. 648, 44 L. Ed. 801, the court, in discussing similar questions, quotes with approval the language of the court in Lacassagne v. Chapuis, 144 U. S. 119, 124, 12 Sup. Ct. 661, 36 L. Ed. 370, as follows:

"The plaintiff was out of possession when he instituted this suit, and by the prayer of this bill he attempts to regain possession by means of the injunction asked for. In other words, the effort is to restore the plaintiff by injunction to rights of which he had been deprived. The function of an injunction is to afford preventive relief, not to redress alleged wrongs which had been committed already. An injunction will not be used to take property out of the possession of one party and put it into that of another. * * * The plaintiff has a full, adequate, and complete remedy at law, and the case is not one for the jurisdiction of a court of equity."

See, also, Gordon v. Jackson (C. C.) 72 Fed. 86; Randolph v. Allen, 19 C. C. A. 353, 73 Fed. 23, 30; Grether v. Wright, 23 C. C. A. 498, 75 Fed. 742, 748; Childs v. Carlstein Co. (C. C.) 76 Fed. 86, 95; Davidson v. Calkins (C. C.) 92 Fed. 230, 232, and authorities there cited; Morrison v. Marker (C. C.) 93 Fed. 692, 695, and authorities there cited; Hanley v. Coal Co. (C. C.) 110 Fed. 62, 69.

We are of opinion that the circuit court had no jurisdiction to try the title to the property, or to adjudge the complainant to be entitled to the possession thereof.

Appellants' counsel claim that the bill was framed upon the theory that the controversy of the parties before the land department turned solely upon a pure question of law, to be finally determined by the court, and did not and does not involve any question of fact over which the land department had or has exclusive jurisdiction. But, in any event, if the court should hold that it had no jurisdiction to try the title between the parties, or to enter a decree for the possession thereof as prayed for in the bill, it nevertheless has jurisdiction and should have entertained the bill in so far as it asked for an injunction to preserve the statu quo pending the determination of the controversy between the parties in the land department. The general disposition of the courts is to retain jurisdiction of any subject where there is any plausible ground of equitable cognizance (Waite v. O'Neil [C. C.] 72 Fed. 348, 356; Randolph v. Allen, 19 C. C. A. 353, 73 Fed. 23, 30; Grether v. Wright, 23 C. C. A. 498, 75 Fed. 742, 749; Greeley v. Lowe, 155 U. S. 58, 75, 15 Sup. Ct. 24, 39 L. Ed. 69), especially where such jurisdiction would not infringe upon the constitutional rights of the parties to a trial by jury.

Does the bill of complaint, from any legal or equitable standpoint, state facts sufficient to show that complainant is entitled to any relief? It will be observed from the allegations contained in the bill that the pleader did not confine himself to a statement of the facts, but interjected therein his construction and conclusion not only as to the facts, and the meaning of the act of congress of June 4, 1897, but also his views in regard to the legal principles applicable thereto. While the rule is well settled that in considering the points raised by a demurrer the facts stated in the bill must be treated as true, it does not by any means follow that the conclusions of counsel as to the law must likewise be accepted as correct. It is the duty of the court to determine the principles of law applicable to the facts stated in the bill. The act of June 4, 1897, is the measure of appellant's rights and of its duties. By the averments in its bill of complaint, has it brought itself within the requirements of the law? A person making selections of land under the provisions of the act of congress of June 4, 1897, must relinquish to the government the tract in the forest reservation, and submit satisfactory evidence respecting the title thereto, and must make selection of the tract desired in exchange for the tract of land relinquished, and accompany his selection by proof showing the selected land to be of the condition and character making it subject to selection. These are the essential requirements of the act.

The principal contentions of the respective parties in their briefs and upon the oral argument may be briefly stated as follows: On the part of appellant: (1) That lands are vacant and open to settlement, and hence subject to selection under said act, when no other claim thereto is disclosed by the land office records, unless at the date of selection they are known to contain minerals to such an extent as to make them more valuable on account thereof than for agricultural purposes; (2) that defendants' mining locations are void because no discovery of petroleum had been made at the time of the location, nor until after the lands had been selected by appellant's grantor, and that, notwithstanding the mining locations of appellees, the land was vacant and open to settlement at the time it was selected by Johnston; (3) that the equitable title to lands selected in lieu of patented lands relinquished vests at the date of selection, and cannot be impaired by subsequent mineral discoveries in the land. On the part of appellees: (1) That lands are vacant and open to settlement, and therefore subject to selection under said act, only when they are unoccupied by others, are free from other claim of record, and are nonmineral in character; (2) that lands selected under said act in lieu of relinquished forest reserve lands, covered by patent, remain open to exploration under the mining laws until the approval of the selection by the land department, and if at any time after the selection, and before its approval, the selected land is discovered to contain valuable mineral deposits, its mineral character will be thereby established, and the selection defeated.

In the homestead and pre-emption cases questions have frequently arisen as to the known character of the land at the date of the cash entry, and it has been generally held that if the land was then known to be mineral land, chiefly valuable for its mineral contents, or more valuable for mining than agricultural purposes, it is not subject to entry. If no such facts as to the mineral character of the land are shown to exist, the pre-emptioner or homesteader, if he is possessed of the necessary qualifications and has fully complied with the pre-emption or homestead laws, as the case may be, at the time of his cash entry, is entitled to the land. The general rule is well settled that the right to a patent, once vested, is treated by the government, in dealing with the public lands, as equivalent to a patent issued, and, when the patent does issue, it relates back to the inception of the right of the patentee. Carroll v. Safford, 3 How. 441, 11 L. Ed. 671; U. S. v. Hughes, 11 How. 552, 568, 13 L. Ed. 809; French v. Spencer, 21 How. 228, 19 L. Ed. 97; Hughes v. U. S., 4 Wall. 232, 18 L. Ed. 303; Stark v Starrs, 6 Wall. 402, 414, 18 L. Ed. 925; Wirth v. Branson, 98 U. S. 118, 121, 25 L. Ed. 86; Simmons v. Wagner, 101 U. S. 260, 261, 25 L. Ed. 910; Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; Davis v. Wiebbold, 139 U. S. 507, 528, 11 Sup. Ct. 628, 35 L. Ed. 238; Hedrick v. Railroad Co., 167 U. S. 673, 679, 17 Sup. Ct. 922, 42 L. Ed. 320. The commissioner of the general land office has authority to make regulations respecting the disposal of the public lands, and such regulations, when not repugnant to the acts of congress, have the force and effect of laws. The regulations of the commissioner relative to lieu land selections

under the act of June 4, 1897 (prescribed June 30, 1897), are, in our opinion, reasonable, and evidently were intended and are well calculated to carry into effect the intent and true meaning of the act of congress. They are properly within the limitations of the law for the enforcement of which they were promulgated, and should be complied with. Anchor v. Howe (C. C.) 50 Fed. 366; Iron Co. v. James, 32 C. C. A. 348, 89 Fed. 811, 814; Hoover v. Salling (C. C.) 102 Fed. 716, 720; Poppe v. Athearn, 42 Cal. 606, 609; Chapman v. Quinn, 56 Cal. 266, 273. We understand it to be virtually admitted that the party making an exchange of land under the forest reserve act, like any other entryman upon the public lands of the United States, only secures a vested interest in the lands which he has selected in exchange for or in lieu of the lands relinquished by him when he lawfully enters upon the same, and in all respects complies with the requirements of the law under which he claims his rights. This general principle is too well settled to require any elaborate discussion. It has been so decided by this court in Mortgage Co. v. Hopper, 12 C. C. A. 293, 64 Fed. 553, 555; Diller v. Hawley, 26 C. C. A. 514, 81 Fed. 651, 653. The latter case was taken to the supreme court of the United States, and was there affirmed. 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157. As illustrative and decisive of many of the questions discussed by counsel, we quote from Lumber Co. v. Rust, 168 U. S. 589, 592, 18 Sup. Ct. 208, 209, 42 L. Ed. 591, 592:

"'Generally speaking, while the legal title remains in the United States, the grant is in process of administration, and the land is subject to the jurisdiction of the land department of the government. It is true, a patent is not always necessary for the transfer of the legal title. Sometimes an act of congress will pass the fee. Strother v. Lucas, 12 Pet. 410, 454, 9 L. Ed. 1137; Grignon v. Astor, 2 How. 319, 11 L. Ed. 283; Chouteau v. Eckhart, 2 How. 344, 372, 11 L. Ed. 293; Glasgow v. Hortiz, 1 Black, 595, 17 L. Ed. 110; Langdeau v. Hanes, 21 Wall. 521, 22 L. Ed. 606; Ryan v. Carter, 93 U. S. 78, 23 L. Ed. 807. Sometimes a certification of a list of lands to the grantee is declared to be operative to transfer such title. Rev. St. § 2449; Frasher v. O'Connor, 115 U. S. 102, 5 Sup. Ct. 1141, 29 L. Ed. 311. But, wherever the granting act specifically provides for the issue of a patent, then the rule is that the legal title remains in the government until the issue of the patent. Bagnell v. Broderick, 13 Pet. 436, 450, 10 L. Ed. 235. And while so remaining the grant is in process of administration, and the jurisdiction of the land department is not lost. It is, of course, not pretended that, when an equitable title has passed, the land department has power to arbitrarily destroy that equitable title. It has jurisdiction, however, after proper notice to the party claiming such equitable title, and upon a hearing, to determine the question whether or not such title has passed. Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482; Orchard v. Alexander, 157 U. S. 372, 383, 15 Sup. Ct. 635, 39 L. Ed. 737; Parsons v. Venzke, 164 U. S. 89, 17 Sup. Ct. 27, 41 L. Ed. 360. In other words, the power of the department to inquire into the extent and validity of the rights claimed against the government does not cease until the legal title has passed. 'A warrant and survey' authorize the proprietor of them to demand the legal title, but do not in themselves constitute a legal title. Until the consummation of the title by a grant, the person who acquires an equity holds a right subject to examination.' Miller v. Kerr, 7 Wheat. 1, 6, 5 L. Ed. 381. After the issue of the patent the matter becomes subject to inquiry only in the courts and by judicial proceedings. U. S. v. Stone, 2 Wall. 525, 535, 17 L. Ed. 765; Moore v. Robbins, 96 U. S. 530, 24 L. Ed. 848; U. S. v. Schurz, 102 U. S. 378, 396, 26 L. Ed. 167; Bicknell v. Comstock, 113 U. S. 149, 151, 5 Sup. Ct. 399, 28 L. Ed. 962; Mining Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155; Williams v. U. S.,

138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026. This jurisdiction of the department has been maintained in cases of pre-emption where the entire purchase money has been paid, and a receiver's final certificate issued. Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737, and cases cited in the opinion; Parsons v. Venzke, 164 U. S. 89, 17 Sup. Ct. 27, 41 L. Ed. 360."

See, also, Knight v. Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157.

Referring to the provisions of the act of June 4, 1897, upon which the right of appellant is founded, we find it there stated that the party relinquishing his forest reserve land "may select in lieu thereof a tract of vacant land open to settlement." He cannot select in lieu thereof any tract of public land that is not vacant nor open to settlement. The bill of complaint alleges a full compliance on behalf of appellants' grantor, Johnston, with all the provisions of the statute, and further alleges that defendants controvert this proposition, and "base their rights in and title to the premises" upon a certain pretended placer mining location, covering the southwest quarter, alleged to have been made upon the 11th day of June, 1899, under the mining laws of the United States, by parties under whom the defendants claim to have acquired title by mesne conveyance, and then alleges that these alleged placer mining locations were and are irregular and void because the same were not based upon any discovery of mineral or oil thereon, and that in fact no discovery of oil was made thereon until after the said land was selected by said Johnston under the act of congress, and that since said land was selected by Johnston the defendants have entered thereupon, bored for and obtained petroleum thereon, and are now engaged in marketing the same therefrom. It will be noticed that these locations were made over six months prior to the date of selection under the forest reserve act by the grantor of appellant. What is the meaning of the words "vacant lands open to settlement," used in the act with reference to the facts as alleged in the bill? The ordinary meaning of the word "vacant," in its general use, is to be empty or unfilled. When applied to an office, it means the condition when it is first created, and not filled by any incumbent, or after the death or removal of an incumbent before his successor is appointed. Vacant lands are such as are absolutely free, unclaimed, and unoccupied. "The word 'vacant,' when applied to lands, means those which have not been appropriated by individuals." Marshall v. Bompart, 18 Mo. 84, 87. Under the wise and beneficent policy of the government of the United States, all its public lands were thrown open to its citizens, and those who had declared their intention to become such, for exploration for the precious minerals and development thereof. Section 2319, Rev. St.:

"All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts so far as the same are applicable and not inconsistent with the laws of the United States."

The grantors of defendants, at the invitation of the government, and assurance of protection from it, and believing that the lands in question contained oil, lawfully entered thereon and made locations of 20-acre tracts, as they were authorized to do by the laws of the United States, and commenced to search for oil.

Chapter 216, 29 Stat. 526, reads as follows:

"That any person authorized to enter lands under the mining laws of the United States may enter and obtain patent to lands containing petroleum or other mineral oils, and chiefly valuable therefor, under the provisions of the laws relating to placer mineral claims: provided, that lands containing such petroleum or other mineral oils which have heretofore been filed upon, claimed, or improved as mineral, but not yet patented, may be held and patented under the provisions of this act the same as if such filing, claim, or improvement were subsequent to the date of the passage hereof."

From the allegations of the bill it appears that at the time of appellants' selection of the lands in question no discovery of any mineral had been made. Appellees could not at that time have acquired any title to the lands included in their locations. The discovery of mineral was essential for that purpose, but they were not trespassers upon the public lands of the United States. They had a lawful right to be there. They were in occupancy of the land they had located. They claimed it to be mineral and were diligently at work to prove it to be such. Under these circumstances it cannot, in our opinion, be said to be vacant land at the time of appellants' selection thereof under the provisions of the act of 1897. The land was not vacant and open to settlement at that time, because it was then occupied by the defendant's grantors under a claim and color of right. It matters not that they had not at that time acquired any rights against the United States. It is true that no valid location of a mining claim can be made, under the mining laws, until the discovery of mineral. Section 2320 of the Revised Statutes expressly provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." It does not, however, follow that, because no mineral was found, the land in question was unoccupied. It is true, as was held in Garthe v. Hart, 73 Cal. 541, 15 Pac. 93, that the mere possession of a piece of mining ground is only good as against an intruder, but not as against one who subsequently located the same in compliance with the mining laws. The same principle was announced in Crossman v. Pendery (C. C.) 8 Fed. 693, but Miller, J., in the course of his opinion, said:

"A prospector on the public mineral domain may protect himself in the possession of his pedis possessio while he is searching for mineral. His possession, so held, is good as a possessory title against all the world, except the government of the United States."

The location of a mining claim is but one step toward the acquirement of a title thereto. As a matter of fact, the location is seldom the first act. It is sometimes the last step taken. As was said in Erwin v. Perego, 35 C. C. A. 482, 485, 93 Fed. 608, 611:

"The marking of the boundaries of the claim may precede the discovery, or the discovery may precede the marking; and if both are completed before the rights of others intervene, the earlier act will inure to the benefit of the locator as of the date of the later, and a complete possessory title to the premises will vest in him as of the later date. Jupiter Min. Co. v. Bodie

Consol. Min. Co. (C. C.) 11 Fed. 666, 676; 4 Morr. Min. Rep. 411, 423; North Noonday Min. Co. v. Orient Min. Co. (C. C.) 1 Fed. 522, 531; Zollars v Evans (C. C.) 5 Fed. 172, 175; Strepey v. Stark (Colo. Sup.) 5 Pac. 111, 114; Thompson v. Spray, 72 Cal. 528, 533, 14 Pac. 182; Erhardt v. Boaro, 113 U. S. 527, 536, 5 Sup. Ct. 560, 28 L. Ed. 1113."

But, whatever his rights may be, the fact that the miner is in the actual possession without having made any location at all shows that the land is not "vacant."

Prior to the passage of the acts of congress for the disposition of the mineral lands, it was expressly held that, when a notice was posted and the boundaries marked, possession extended to the entire limits, although the location was not made in the manner prescribed by local rules. Attwood v. Fricot, 17 Cal. 37, 76 Am. Dec. 567; English v. Johnson, 17 Cal. 107, 76 Am. Dec. 574. Since the enactment by congress of the laws for the disposition of the public mineral lands the same doctrine has been applied. Field v. Grey, 1 Ariz. 404, 25 Pac. 793; Mining Co. v. Hendry (N. M.) 50 Pac. 330. The fact that defendants, under their mining locations had not, at the time of Johnston's selection of the land as agricultural, discovered any petroleum,—that being the mineral for which their locations were made,—shows that they had not perfected their locations under the mining laws; that their absolute right to the exclusive possession of the ground covered by their locations, as against the government of the United States, had not accrued to them, and the government might, if it had seen fit so to do, have terminated the license theretofore given to them to occupy the land, and congress might have granted the land to others. But under the act of June 4, 1897, it will be observed that congress did not grant the right under the forest reserve act to select any lands unless they were vacant. It therefore necessarily follows that, if the land was not vacant and open to settlement, Johnston did not acquire any title to the lands in question. He was, in the eye of the law, a trespasser, because so far as that act is concerned the lands were excepted from such selection, and by attempting to make such selection he was a mere intruder, and his grantee is not in a position to question the validity of the defendants' locations. From the averments contained in the bill, we cannot agree with the poetic fancy of the learned counsel for appellant that this land at the time of Johnston's entry "lay under the sunshine of God, just as denuded of possession as it was on the dawn of the primal morning." In Tarpey v. Madsen, 178 U. S. 215, 220, 20 Sup. Ct. 849, 851, 44 L. Ed. 1042, 1045, the court, in discussing a similar question, with reference to the occupancy of public land by parties whose claims rested on no statute, and upon no other right than the general recognition by the government in its disposition to protect actual settlers, said:

"It must be remembered that mere occupation of the public lands gives no right as against the government. It is a matter of common knowledge that many go on the public domain, build cabins, and establish themselves, temporarily, at least, as occupants, but having in view simply prospecting for minerals, hunting, trapping, etc., and with no thought of acquiring title to land. Such occupation is often accompanied by buildings and inclosures for housing and care of stock, and sometimes by cultivation of the soil with a view of providing fresh vegetables. These occupants are not, in the eye of

the law, considered as technically trespassers. No individual can interfere with their occupation or compel them to leave. Their possessory rights are recognized as of value, and made the subjects of barter and sale. Lamb v. Davenport, 18 Wall. 307, 21 L. Ed. 759."

In Shaw v. Kellog, 170 U. S. 312, 332, 18 Sup. Ct. 632, 641, 42 L. Ed. 1050, 1057, the court discussed many questions which are directly applicable to the present case. The facts in relation to the selection of lands were very similar to the act under consideration. The court, in reference to the subject we are now considering, said:

"The grant was made in lieu of certain specific lands claimed by the Baca heirs in the vicinity of Las Vegas, and it was the purpose to permit the taking of a similar body of land anywhere within the limits of New Mexico. The grantees, the Baca heirs, were authorized to select this body of land. They were not at liberty to select lands already occupied by others. The lands must be vacant."

In Kern Oil Co. v. Clarke, 30 Land Dec. Dep. Int. 550, 555, the secretary of the interior, among other things, said:

"The act in question contains an offer by the government to exchange any of its lands that are vacant and open to settlement for a like quantity of lands, within a forest reservation, for which a patent has been issued, or to which an unperfected bona fide claim has been acquired. If he desires to accept the offered exchange, the owner or claimant of the tract in the forest reservation can relinquish the same to the government, and select a tract of public land of like quantity in lieu of the tract relinquished. He is to make the selection, and in doing so he is confined to lands which are both vacant and open to settlement. They must not be occupied by others, nor reserved from settlement on account of their known mineral character or otherwise."

The contention of appellant that the act of congress has reference only to vacant land open to settlement which appears upon the books of the land department cannot be sustained. In the brief of appellant, counsel say:

"It is respectfully and confidently submitted that this word 'vacant' has never been held to apply merely to 'unoccupied public lands,' but to all public lands which the records of the land office show are unreserved and unappropriated, whether actually occupied or not. In other words, the term 'vacant lands,' in general land office parlance, from time immemorial, has meant simply this: Those public lands which are unreserved and unappropriated, as shown by the records of the general land office."

Some of the richest mineral lands in the United States, which have been owned, occupied, and developed by individuals and corporations for many years, have never been patented. It would be absurd to say that such lands were vacant and open to settlement because the books of the land department do not show that they have been settled upon. The possessory rights of the miners have always been recognized by law, although in all such cases the legal title to the land remains in the government.

In Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313, the court, in relation to the subject we are discussing, in the course of its opinion, said:

"Congress has, by statutes and by tacit consent, permitted individuals and corporations to dig out and convert to their own use the ores containing the precious metals which are found in the lands belonging to the government, without exacting or receiving any compensation for those ores, and without requiring the miner to buy or pay for the land. It has gone further, and recognized the possessory rights of these miners, as ascertained among them-

selves by the rules which have become the laws of the mining districts as regards mining claims."

Rev. St. §§ 2318–2352.

In Kern Oil Co. v. Clarke, supra, Secretary Hitchcock, in discussing this subject, said:

"The statute authorizes selection only of 'vacant land open to settlement.' To be vacant, the land must not be occupied by others. To be open to settlement, it must not be known to be valuable for minerals, or reserved from settlement for any other reason. In so far as the existing conditions appear from the land office records,—that is, whether the selected tract is of lands to which the settlement laws have been extended, and whether the same is free from record appropriation, claim, or reservation,—no showing by the selector in respect thereto need be made, for the reason that the officers of the government can and must take notice of the public records. But as to conditions, the existence or nonexistence of which cannot be determined by anything appearing upon the public records, and as to which the officers of the government must depend entirely upon outside evidence,—that is, whether the selected tract is occupied by others or known to be valuable for minerals,—it is manifestly necessary that the required evidence should be furnished by the selector. The officers of the government cannot be expected to know whether land selected under the act is vacant and not known to be valuable for minerals, and in these respects subject to selection. * * * Obviously, therefore, it could not have been contemplated that the local officers of the various land districts should or could, from personal knowledge, determine the physical conditions pertaining to lands selected under said act. The argument is intensified when applied to the commissioner of the general land office and the secretary of the interior. Nor can selections be lawfully accepted until there is a showing that the selected land is vacant and not known to be valuable for minerals. No other lands are subject to selection, and no selection can be regarded as complete until these essential conditions are made to appear. They do not appear from the public surveys. In this case the lands were surveyed in 1851. Whether since that date they have been continuously or at any time vacant or occupied, and whether at any time known to be valuable for minerals, and, if so, whether stripped of their minerals and worked out, are matters not shown by the land office records."

The contention of appellant would, if its doctrines were to prevail, lead to results which are denounced in Atherton v. Fowler, 96 U. S. 513, 516, 24 L. Ed. 732, as being antagonistic to the true intent and meaning of the pre-emption laws. In that case it was held that the right to make a settlement is only to be exercised on unsettled lands, that the right to make improvements is to be exercised on unimproved land, that the right to erect a dwelling house is to be exercised only on vacant land, and that none of these things can be done on land when it is occupied and used by others. No right can be initiated on government land which is in the actual possession of another by a forcible, fraudulent, or clandestine entry thereon. Cowell v. Lammers (C. C.) 21 Fed. 200, 202; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 674, 680; Hosmer v. Wallace, 97 U. S. 575, 579, 24 L. Ed. 1130; Trenouth v. San Francisco, 100 U. S. 251, 25 L. Ed. 626; Mower v. Fletcher, 116 U. S. 380, 385, 386, 6 Sup. Ct. 409, 29 L. Ed. 593; Haws v. Mining Co., 160 U. S. 303, 317, 16 Sup. Ct. 282, 40 L. Ed. 436; Nickals v. Winn, 17 Nev. 188, 193, 30 Pac. 435; McBrown v. Morris, 59 Cal. 64, 72; Goodwin v. McCabe, 75 Cal. 584, 588, 17 Pac. 705; Rourke v. McNally, 98 Cal. 291, 33 Pac. 62. The decisions upon this point are not all confined

to cases where the entry was forcible, although in such cases the courts did not discuss the question whether the same principles would apply to cases of an entry upon lands in the actual possession of another without the use of force. In Quinby v. Conlan, 104 U. S. 420, 423, 26 L. Ed. 800, the element of force is not shown to have existed, and is not adverted to in the opinion. The court said:

"A settlement cannot be made upon public land already occupied. As against existing occupants, the settlement of another is ineffectual to establish a pre-emptive right. Such is the purport of our decisions in Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732, and Hosmer v. Wallace, 97 U. S. 575, 24 L. Ed. 1130."

In Goodwin v. McCabe, supra, the court said:

"If the plaintiff was in the actual possession of the land, we think the defendant's proceedings were invalid, although his entry was accomplished without the use of force. This seems to be the result of the authorities. * * * The reasoning of the court in all cases seems to us to forbid the invasion of the actual possession of another, whether such invasion is accomplished by the use of force or not."

In Gird v. California Oil Co. (C. C.) 60 Fed. 531, 545, this principle is recognized. The court said:

"If Irland was in the actual possession, and working the ground for himself, and Bradfield, Henley, and Thompson were acting for themselves in making the location of the Razzle Dazzle on December 6, 1890, the location so made by them would be void, because in that event the location would have been made upon ground not vacant and open to location, but upon ground in the actual and adverse occupancy of another."

Having arrived at the conclusion, from the facts stated in the bill of complaint and the principles of law applicable thereto, that the lands selected by the grantor of appellant were not at the time of such selection "vacant land open to settlement," it is unnecessary to review the many other questions which were elaborately argued by the learned counsel. It necessarily follows from the views we have expressed that the bill of complaint does not state any cause of action entitling appellant to any relief against the defendants. The court did not, therefore, err in sustaining the demurrer and dismissing the bill.

It is proper to state that, after the preparation of this opinion, appellant was given permission to present to this court the brief filed in its behalf before the secretary of the interior upon its application for a review of its decision in Kern Oil Co. v. Clarke, 30 Land Dec. Dep. Int. 550, and Cosmos Exploration Co. v. Gray Eagle Oil Co., 30 Land Dec. Dep. Int. 570, wherein, among other things, the question of the meaning of the words "vacant lands open to settlement," as used in the act of congress of June 4, 1897, is elaborately discussed. It is enough to say in reply thereto that we have examined this brief and the additional authorities therein cited, and deem it unnecessary to further discuss the question.

The judgment of the circuit court in both cases is affirmed, with costs.

GILBERT, Circuit Judge (dissenting). I agree with the majority of the court that the crucial question of the present cases is whether

or not the appellees had such possession or right of possession of the premises in controversy as to take them out of the list of vacant lands open to settlement at the date when the appellant's grantor selected them as lieu lands. Assuming the settled law to be that land is not mineral land on which mineral has not been discovered, and that therefore the premises in question here were not excluded from selection on the ground that they were not agricultural land, the case resolves itself into the inquiry, what was the nature of the right which the appellees had secured prior to December, 1899, when the appellant's grantor made his selection? The bill alleges that in the month of June of that year the appellees had located upon these premises certain placer mining claims. The nature of the act by which such locations were made is not stated. It may be assumed that it consisted in marking and establishing the four corners, and posting at one of them a notice of the claim. These acts by themselves alone gave no right whatever to the locator. They were not the initiation of a claim, nor did they constitute constructive possession. The most that could be claimed for them is that the locations took effect at the date of the discovery of mineral in paying quantity, provided that rights of others had not then intervened. Jupiter Min. Co. v. Bodie Consol. Min. Co. (C. C.) 11 Fed. 666; Erwin v. Perego, 35 C. C. A. 482, 93 Fed. 608. So far as the present controversy is concerned, therefore, the acts of location made in June, 1899, may be eliminated from the case, for they can have no bearing upon the question under discussion. According to the allegations of the bill, no other act was done by the locators between the date of location and the date of the selection of the land by the appellant's grantor in the following December. The bill charges, however, that after such selection was made the defendants, on or about January 6, 1900, entered upon the lands; and erected derricks thereon, and bored for oil, which on or about the last day of January, 1900, they discovered in paying quantity. This is the state of the facts as presented by the bill, and by which we must be guided in dealing with the demurrer. I submit that the mere location of a mining claim on land that is not mineral, unaccompanied by other acts, is insufficient to initiate any kind of right to the land, and that land covered by such a claim is as truly vacant land open to settlement as is any other land of the public domain. But the opinion of the majority of the court contains the statement that the appellees were, at the time of the selection of these lands as lieu lands, "in the occupancy of the land they had located. They claimed it to be mineral, and they were diligently at work to prove it to be such." This statement is based upon the assumption that there must be read into the bill certain facts which are found in the affidavits filed on behalf of the appellees upon the application which was made for an injunction. I know of no rule of chancery practice which permits us to do this, or to take as proven any allegation that the complainant has not admitted to be true; but if, indeed, we are authorized to consider the case as if these facts had been incorporated in the bill, I am still of the opinion that the demurrer should have been overruled. What is the nature of the right of a prospector upon the public lands of the United States? It is

settled that he is not a trespasser. On the contrary, he is invited to explore and to occupy. By the act of May 10, 1872, all valuable mineral deposits are declared to be free and open for exploration and purchase, "and the land in which they are found to occupation and purchase." It will be observed that by the terms of the statute the right to occupy follows the discovery. There is no statutory right of possession or occupation, or any other right whatever conferred by any statute, prior to discovery, save and except the right of exploration. While permitting the freest exploration, it does not appear to be the purpose of the legislation in regard to the mineral lands of the United States to permit a prospector or an intending locator to initiate any kind of right to such lands prior to a discovery, or to permit him by any act of his prior to discovery to interfere with the appropriation and settlement of lands as agricultural lands under the public land laws, or other laws offering such lands to selection or appropriation. All the decisions to which my attention has been directed are reconcilable with this view. The courts have gone no further than to hold that the possession of a prospector may not be interfered with by one who has no better right than he. This has been held, not as the construction of the mining laws, but, upon motives of public policy, to prevent entries by force and violence. One in possession of premises without right or title may prevent the intrusion of another who is equally without right or title solely upon the ground that possession is prima facie evidence of title. Atherton v. Fowler, 96 U. S. 513, 24 L. Ed. 732; Brandt v. Wheaton, 52 Cal. 430, Campbell v. Rankin, 99 U. S. 261, 25 L. Ed. 435. It is contended that certain decisions go further than the doctrine above announced, and reference is made to the opinion of Mr. Justice Miller in Crossman v. Pendery (C. C.) 8 Fed. 693, and to the language of the supreme court in Tarpey v. Madsen, 178 U. S. 215, 20 Sup. Ct. 849, 44 L. Ed. 1042. In the first of these cases it was held that a prospector upon the public mineral domain may, as against another prospector, protect his pedis possessio while searching for mineral. The learned justice proceeded to remark, "His possession, so held, is good as a possessory title against all the world, except the government of the United States." I submit that this language means no more than that such possession is good as against all except those who may initiate a right to the land under the land laws of the United States, or who may place themselves in the attitude of acquiring the right or title of the United States. The court in that case was called upon to discuss no question save the relative rights of rival prospectors, and the language used is referable only to that controversy. So, in Tarpey v. Madsen the question before the court was whether one who had actually occupied public land with the intention to make a homestead or pre-emption entry could be defeated by the mere lack of a place where to make a record of his intention. Incidentally the court remarked:

"It is a matter of common knowledge that many go on to the public domain, build cabins, and establish themselves, temporarily, at least, as occupants, but having in view simply prospecting for minerals, hunting, trapping, etc., and with no thought of acquiring title to land. Such occupation is often accompanied by buildings and inclosures for housing and care of stock,

and sometimes by cultivation of the soil with a view of providing fresh veg-
etables.   These occupants are not, in the eye of the law, considered as tech-
nically trespassers.   No individual can interfere with their occupation, or
compel them to leave.   Their possessory rights are recognized as of value,
and made the subjects of barter and sale."

Clearly, this language means no more than that the possession of
the public lands which is referred to in the quotation is good as
against a stranger.   Can it be said that the supreme court intended
to say that one who enters upon and takes possession of public land
for purposes of "hunting or trapping," and with "no thought of ac-
quiring title to the land," acquires a right which he can hold as
against an intending settler under the homestead laws?   The lan-
guage is susceptible of no such construction,—a construction totally
at variance with the trend and policy of all legislation concerning
the disposition of the public lands, and directly contrary to the
provisions of the statute of February 25, 1885, entitled "An act to
prevent unlawful occupancy of the public lands."   The true meaning
of the language so quoted from the opinion of the court is found in
the words of the same court in Sparks v. Pierce, 115 U. S. 413, 6
Sup. Ct. 105, 29 L. Ed. 429, where it was said:

"Mere occupancy of the public lands, and improvements thereon, give no
vested right therein as against the United States, and consequently not
against any purchaser from them."

The appellants in the cases under consideration are purchasers
from the United States.

The right to explore for minerals upon the public domain is but
a license.   It does not, prior to discovery, constitute a legal right
in or to the land on which the exploration is made.   The attitude of
the prospector to the land is not like the entry of a settler under the
pre-emption law, or like that of any other permitted appropriator of
the public lands.   He is not required to enter with any intention of
ultimately acquiring title, nor does he in fact enter with such inten-
tion.   His intention must, of necessity, depend upon the result of his
investigation.   He may rove over the public lands at will, and may
dig and excavate wherever he may choose, provided that he shall
not interfere with another who is making like explorations, or tres-
pass upon the lawful possession of another.   Until the discovery of
the mineral, the law gives him no right whatever, except to defend
himself against the invasion of another who has no greater right.   If
a prospector while exploring for mineral permit another to enter
peaceably upon the same premises and to explore, there can be no
question that the latter, if he first discover mineral, will acquire the
right thereto, and the right to locate the claim.   Belk v. Meagher, 3
Mont. 65; Id., 104 U. S. 279, 26 L. Ed. 735.   The general nature of
the right of the prospector has often been defined by the courts.
Said Judge Sawyer in Jupiter Min. Co. v. Bodie Consol. Min. Co.
(C. C.) 11 Fed. 675, "No rights can be acquired under the statute by
a location made before the discovery."   The circuit court of appeals
for the Eighth circuit, in Erwin v. Perego, 35 C. C. A. 482, 93 Fed.
611, speaking of the two essential acts of discovery and location said,
"But when these requirements have been complied with the land is

no longer public, but the possession, the right of possession, and the right to acquire the title are irrevocably vested in the locator." There are similar expressions in the decisions of the state courts. "The right of possession comes only from a valid location." Russel v. Hoyt, 4 Mont. 421, 2 Pac. 25. "The mere naked possession of a mining claim is not sufficient to hold such a claim against a subsequent location made in pursuance of law." Hopkins v. Noyes, 4 Mont. 556, 2 Pac. 280. "Possession is good against mere intruders, but is not good as against one who has complied with the mining laws." Garthe v. Hart, 73 Cal. 543, 15 Pac. 93. If it be the law that vacant, nonmineral land, upon which a prospector is making his explorations, is not open to settlement or to selection as lieu land, and that such a prospector, by his mere presence, or by having dug a hole or erected a derrick, acquires the right to retain possession of the land until his explorations shall be finished, what is the limit of his right, and where is the halting place? What acts of a prospector shall be sufficient, and what shall not be sufficient, to withdraw such lands from settlement or from selection as agricultural lands? How shall a lieu-land selector or a homestead settler know that a prospector is not, or has not recently been, digging or otherwise exploring for mineral in some gulch or cañon of the nonmineral land included in the entry or selection? And how shall he ascertain that exploration once begun has ceased? How extensive an area of the public domain, and for how long a period of time, may a single prospector so occupy that it shall not be open to settlement or selection? It is no answer to these inquiries to say that the court will not in the present case define the nature of the acts which will constitute such a possessory right, but will content itself with the conclusion that the acts set forth in the case at bar are sufficient. I submit that the decision imports into the statute terms that are not there written, and that were not within the intention of congress, and that by the use of the words "vacant land open to settlement" the intention was to refer the selector of lieu lands to the records of the land office, and to the condition of the land itself, whether in the open occupation of a settler holding the possession with the avowed intention of acquiring title under the public land laws, and not to leave the question, what are vacant lands open to settlement? to be variably answered by the judgments of courts upon the special facts presented in each case.