## CHARLES COMBS *v.* ANDREW JELLY.

CERTIFICATE OF PURCHASE OF SEMINARY LAND.—An unintentional mistake or misrepresentation in an affidavit made by an applicant to purchase land of this State as a portion of the seventy-two sections granted by Congress to this State for a seminary of learning, does not render the certificate of purchase void, so that it may be attacked collaterally by one who brings an action against the purchaser to recover possession of the same, and does not connect himself with the title of the Government.

WHEN STATE CERTIFICATE OF PURCHASE VOID.—The question discussed in the opinion whether a certificate of purchase of land, being a contract between the Government and the purchaser, will be declared void for fraud, unless under similar circumstances a contract between two private persons would be held void.

CAN STATE LAND CERTIFICATE BE ATTACKED COLLATERALLY.—Question discussed in opinion whether a State certificate of purchase of land, if not absolutely void, may be attacked collaterally.

STATE CERTIFICATE OF PURCHASE OF LAND.—A certificate of purchase of land from the State is *prima facie* evidence of legal title in the purchaser.

APPEAL from the District Court, Second Judicial District, Tehama County.

The facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant, argued that the defendant could not be treated as the trustee of the plaintiff for one half the land in an action at law. He also contended that the defendant could never be treated as the trustee of the plaintiff, unless he could force the plaintiff to pay one half the cost of procuring the title, and cited *Flagg* v. *Mann*, 2 Sumner, 487. He also contended that a purchase of public land never inured to the benefit of a person other than the purchaser, unless there was an express contract to that effect, and cited *Bryant* v. *Hendricks*, 5 Clarke, Iowa, 257.

*W. S. Long*, for Respondent.

By the Court, RHODES, J.

It appears in this case that on the 24th of March, 1862, the plaintiff commenced an action against Elijah Shepherdson and M. D. Shepherdson to recover a certain sum of money, and on that day caused an attachment to be issued and levied upon the premises in controversy. Judgment was afterwards entered, execution was issued, the premises were sold and conveyed by the Sheriff to the plaintiff, the deed being executed September 12, 1863. In 1858 Elijah Shepherdson and M. D. Shepherdson were in possession of the premises, and so remained up to September, 1861, when M. D. Shepherdson left the premises. On the 25th of February, 1862, Elijah Shepherdson sold and conveyed the premises to the defendant. The conveyance purports to be executed by E. and M. D. Shepherdson, but was in fact executed only by Elijah Shepherdson. On the 8th of December, 1863, the defendant made an application to the State Locating Agent to locate the premises as a portion of the lands to which the State was entitled under the grant of seventy-two sections of land by Congress to the State for a State Seminary. Such proceedings were thereupon had that the location was made, and was approved by the proper officers on the part of the State and by the Register and Receiver of the United States Land Office at Marysville, and on the 5th of October, 1863, the Register of the State Land Office issued to the defendant a certificate of purchase.

The plaintiff sued in ejectment to recover the possession of the premises. The Court below found for the plaintiff as to the undivided half of the premises. The defendant appeals from the judgment and from the order denying his motion for a new trial.

The Court found, among other things, that the Shepherdsons were tenants in common of the premises; that by the deed from Elijah Shepherdson to the defendant he became a tenant in common with M. D. Shepherdson, and that by the execution of the Sheriff's deed the plaintiff became the owner

of the half of the premises held by M. D. Shepherdson, and thereupon became a tenant in common with the defendant. In respect to the selection and location of the lands as State Seminary lands, the finding is as follows: " His (the defendant's) first proceeding in that case was a fraud that will vitiate everything that it touches. He was compelled to make an affidavit that there was no valid claim to the land adverse to the one he held, and that there were no improvements upon the land other than his own. He probably believed this to be true, from his deed from E. Shepherdson, not knowing the legal effect of it. But the legal fact was that he was the owner of only an undivided half, and M. D. Shepherdson the other half, as well as of the improvements, and of the share of M. D. Shepherdson plaintiff is now the owner. Defendant's present claim is not a title, but a certificate of location which may ripen into a title hereafter. But an absolute title from the State or United States would place him in no better position."

The defendant, in his motion for a new trial, specifies several particulars in which the evidence is insufficient, as he alleges, to justify the findings; but as we are not apprised of the positions taken by the plaintiff, and have not the assistance of a brief or points and authorities in his behalf, we shall confine our attention to one point, and that is, whether the defendant's certificate of purchase was fraudulent, and therefore void.

No complaint seems to have been made as to the regularity of any of the proceedings, and there is no room for doubt that the land was public land of the United States, subject to be selected on behalf of the State, in part satisfaction of the grant of Congress. We understand the finding to mean that the defendant acquired no right or title in or to any portion of the premises by means of the certificates of location and purchase, but that the whole proceeding was void *in toto* because of the fraud of the defendant. This fraud consists of the single circumstance that the information upon which the officers of the State acted, which was derived from the affi-

davits of the defendant and of two other persons, made in connection with the application for the location and purchase of the land, was not true in fact.   The defendant stated in his affidavit that, to the best of his knowledge and belief, there was no valid claim existing upon the land adverse to the claim he held, and that there was no improvement on the land other than his own. ˙ He is not found guilty of positive fraud, for it is said in the finding that he probably believed his affidavit to be true; and if his proceedings can be held to be fraudulent, he is responsible only for constructive fraud.

Admitting, for the purposes of the argument, that at the time of the application for the location of the land, M. D. Shepherdson was a tenant in common with the defendant, of the possession of the premises as a parcel of public lands; that such tenancy in common constituted a "valid claim existing to said land *adverse* to his (the defendant's) own," within section four of the Act of 1863 (Statutes 1863, p. 593); and that the one half of the improvements on the land were the property of M. D. Shepherdson; the question recurs, did the mistake in these respects of the defendant—his unintentional misrepresentations—his constructive fraud in making the statements in his affidavit, render the certificate of purchase void, so that the sale might be attacked collaterally? It appears very plainly that it did not.   The proceeding amounted to a contract between the State and the purchaser, the State standing in the position of a private proprietor, but simply conducting the negotiations and expressing her assent to the contract in a mode differing from that employed by a private person; and such contract will not be held void, unless, under similar circumstances, a contract between two private persons would be so held.   It is evident that a mistake, an unintentional misrepresentation, or any fraud falling short of positive or actual fraud, will not avoid a contract *ab initio*.   If not absolutely void, it may not be attacked collaterally.   Those may be proper grounds upon which an action may be brought to set aside the contract and cancel the certificate; and perhaps one who shows a better right than that held by the

defendant, entitling him to the preference in making the purchase of a portion or all of the lands, may avail himself of those grounds in proceedings brought by him to have a trust established in his favor in a portion or all of the lands, and to have the defendant declared a trustee holding the legal title for his benefit. But it will be noticed that the parties to this action rely upon the legal title alone; that there is no claim for relief on the ground of fraud, and no equity set up in the complaint; that the State does not complain of the contract, that she is not a party to the action, nor does the plaintiff represent her or in any manner connect himself with her right or title. The issuing of the certificate of purchase completed the contract for the purchase of the lands, and the certificate not being absolutely void, vested in the defendant such legal title in the premises, as it was intended by the Act, should pass prior to the execution by the State, of the patent for the land. The seventeenth section of the Act declares that the certificate of purchase shall be deemed *prima facie* evidence of legal title to the land for which the certificate of purchase was issued, and conceding that the selection was properly made on behalf of the State, the holder of the certificate will prevail in ejectment over one who does not produce a better title derived from the State.

Judgment reversed, and cause remanded for a new trial.