[Sac. No. 1185.    Department Two.—September 20, 1905.]

SOUTHERN CROSS GOLD MINING COMPANY OF KENTUCKY, Respondent, v. WILLIAM SEXTON et al., Appellants.

MINING CLAIM—CERTIFICATE OF PURCHASE—CANCELLATION NOT RETROACTIVE—ANNUAL WORK.—Where the owner of a mining claim, after having applied for a patent, has obtained a certificate of purchase, he is not required to perform any annual work, and the claim is not subject to relocation so long as the certificate remains uncanceled, and the secretary of the interior has no power to make the cancellation of it retroactive.

ID.—MISTAKE OF GOVERNMENT OFFICERS—PROTECTION OF BONA FIDE CLAIMANTS.—Where the *bona fide* mining claimants had done all in their power to do, and had furnished an accurate survey with their application for a patent, and by error or mistake of the government officers, the notice was defectively published, and the certificate of purchase was canceled for such defect, upon application of a subsequent locator, without notice to such claimants, by the secretary of the interior, as of the date of such defective publication of notice, a court of equity will protect such claimants, and limit the cancellation to the date of the secretary's order.

APPEAL from a judgment of the Superior Court of Placer County.    J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, for Appellants.

Tuttle & Tuttle, for Respondent.

HENSHAW, J.—Defendants, as the owners of certain mining claims, applied to the United States land office for a

patent. Within due time after the publication of the notice of the application, plaintiff filed its protest and adverse claim to the issuance of the patent, the land office suspended all proceedings in the matter of the application, and plaintiff then regularly commenced its suit upon the equity side of the court for the determination of the adverse and conflicting claims. It obtained judgment and the defendants appeal.

It appears that prior to 1884 the appellants and their predecessors in interest had made valid mining locations on the premises in controversy, and were in the lawful possession of the mining claims on the sixth day of January, 1885. On this day they filed in the United States land office at Sacramento their application for a patent for the mining claims, together with the necessary and proper papers and proofs required by law and the rules of the land office. On the 6th of January, 1885, the officers of the land office made an order for the publication of the notice of application for the patent, and the notice for publication was drafted by the land officers and delivered to the printer and publisher of the designated newspaper to be published for the statutory length of time. The plat and field-notes posted and filed in the land office show a legally sufficient description of the premises in controversy, but in the published notice of application for a patent there was an error in the omission of a connecting line with its course and distance. No adverse claims of any kind were presented. The necessary final proofs were made, the applicants paid the full price required by law, and received their final certificate of purchase in due form of law. The final proofs and papers and evidence of payment were forwarded to the general land office at Washington, where they remained unquestioned until the twenty-third day of July, 1895. No patent, however, had been issued. On the twenty-third day of July, 1895, an order was made by the commissioner of the land office, in which all these matters were set forth, directing that a "supplemental notice of the application for a patent" be published for the statutory period, to cure the defect in the former published notice, it being stated in the letter and order that "In view of the above omission the *locus* of said claim could not be ascertained by parties who might have desired to protect interests of their own by filing adverse claims." From time to

time extensions were regularly granted to the applicants within which to perform the acts required by the last decision, and the publication was actually commenced on the fourteenth day of December, 1900, and ended on the fifteenth day of February, 1901. The original complaint in this action was filed on the twenty-second day of December, 1900. The second amended complaint, upon which trial was had, was filed February 5, 1902. During all of this time the final certificate of purchase remained unrecalled and uncanceled. In November, 1901, this respondent, as adverse claimant, moved the department, asking that the final receipt or certificate be canceled. The commissioner, on November 22, 1901, formally denied the motion. It then appealed, and the secretary of the interior, on April 22, 1902, reversed the decision of the commissioner, and in it not only ordered the certificate canceled, but declared that it must be treated as canceled of date July 23, 1895, when the commissioner called for the publication of a supplemental notice, the honorable secretary using this language: "The original notice being fatally defective, it was rejected for that reason. Under the law when the notice fell the entry fell also. It no longer had any basis to support it. It must be treated, therefore, as though it had been canceled of record at the time the notice was finally adjudicated to be insufficient. The adjudication of the insufficiency of the notice was equivalent to a determination that the entry had been erroneously allowed, and should be canceled." On July 9, 1900, plaintiff made its entry upon the property and its discovery of a lode, and caused notices of location to be posted and recorded. The defendants, relying upon their certificate of purchase, had performed no labor upon the lands since its issuance. It is undisputed that so long as the certificate remained uncanceled the claims were not forfeited for non-performance of labor and were not subject to relocation. (*Richter* v. *Riley*, 22 Cal. 639; *Combs* v. *Jelly*, 28 Cal. 498.) It appears, moreover, that the appellants had furnished in 1885 accurate descriptions of their claims, sworn to by the United States surveyor-general, and that the error in the original published notice was exclusively the error of officers of the United States in not properly copying the description correctly made by the surveyor-general.

The situation thus presented is, that appellants having done all in their power to do, and having made final proof and payment, and received their final certificate of purchase, were, ten years after the date of it, informed by the commissioner of the land office that there must be published a supplemental notice of their application for a patent or their certificate would be canceled.  In the order so promulgated it was set forth that the original publication was not sufficient to give notice to adverse claimants of the *locus* of the land.  The adverse claimants thus referred to could have been those, and those only, whose claims existed at and prior to the time of the original application.  Appellants proceeded duly to comply with the orders of the department, and the supplemental notice required was published.  Application was made to the department during this time for a cancellation of their certificate and the application was denied.  They relied, as they had a right to rely, during all of this time upon the fact that the certificate relieved them from the necessity of performing annual labor upon their claims.  Subsequently the secretary, without a hearing given to the appellants, ordered the certificate canceled as of a date many years previous, the legal effect of which, if this retroactive order of cancellation of the secretary is to be deemed valid in point of law, being to strip the appellants of all their rights through no fault of their own, with no charge of fraud against them, and while they were relying upon the security of their uncanceled certificate of purchase, which the department, upon application, had formally refused to cancel.  "It is a well-established principle," says the supreme court of the United States in *Lytle* v. *Arkansas,* 9 How. 314, "that where an individual, in the prosecution of a right does everything which the law requires of him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him."  This principle is peculiarly applicable to a case like the present, where an appeal is made to the equity side of the court.  We think the honorable secretary was without power to order a retroactive cancellation so as to cut out the right of the original entryman, who was without fault, and to clear the way for the jumping of his claims by one who, not only never asserted an adverse claim at the time of the original entry and appli-

cation, but who makes its entry fifteen or more years later, basing its right wholly upon the default of the appellants to perform annual labor. The officers of the land department are not above the law. As is said in *Hosmer* v. *Wallace,* 47 Cal. 461, they cannot constitute themselves an *imperium in imperio;* and, as said in *Johnson* v. *Towsley,* 13 Wall. 72, "Courts of equity have a power to inquire into and correct mistakes, injustice, and wrong in judicial and executive action when it invades private rights." We believe that the secretary in promulgating the order for retroactive cancellation of the certificate, without notice to the *bona fide* owners thereof, under the circumstances presented without controversy in this case, acted arbitrarily and in excess of his powers, and, in equity, his ruling cannot be given judicial effect. For, as is said in *Parsons* v. *Venzke,* 164 U. S. 89, [17 Sup. Ct. Rep. 27], the jurisdiction of the land department "is not an arbitrary or unlimited one, to be exercised without notice to the parties interested, nor one beyond judicial review under the same conditions as other orders and rulings of the land department." This language was itself used in reference to the power of the commissioner of the general land office or the secretary of the interior to cancel and set aside a pre-emption entry. Appellants had a perfect right, under the orders and rulings of the department, the original error having arisen through no fault of theirs, to rely upon the certificate of purchase, and, thus relying, to refrain from doing annual labor upon their claims until such time as notice was brought home to them that they could no longer rely upon the security of their certificate because it had been canceled, and it was not within the power of the department, under the indicated circumstances, to order a retroactive cancellation in impairment of the appellants' rights.

The cancellation must therefore, in point of law and equity, be deemed to have been made and to be effective from the date of the secretary's letter, and the judgment appealed from is therefore reversed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.